FREDERICK MULLER et al., Copartners, under the Firm Name of MULLER, SCHALL & COMPANY, Respondents, *v.* JOSEPH KLING, as Assignee of the Firm of SCHOLTZ, SANCHEZ & COMPANY, Appellant.

Bills, notes and checks — right of payee of draft, upon insolvency of drawers, to the security of a fund which was to be created by the transfer to the drawees of a debt due to drawers from a third party — equitable rights of parties.

1. On examination of the facts, upon the submission of a controversy as to the ownership of a certain fund, *held,* that the circumstances attendant upon the purchase of a draft by plaintiffs

from defendants' assignors disclosed that plaintiffs had parted with their money to such assignors on the supposed security of a fund to be created by the transfer by the drawers to the drawees of the debt of a third party; that the rights of plaintiff to the fund arising from the payment of that debt were, therefore, superior to those of general creditors of such assignor.

2. The equitable doctrine is applied that, where the just and clear rights of a party to payment of a debt from a particular fund can be secured in no other way, the fund, or its proceeds, will be regarded as a trust for his better security.

*Muller* v. *Kling*, 149 App. Div. 176, affirmed.

(Argued June 11, 1913; decided October 21, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 19, 1912, in favor of plaintiffs upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The parties submitted to the Appellate Division, in the first department, their controversy over the right to a certain fund in the defendant's hands, upon an agreed statement as to the facts; which are the following.

During the month of May, 1898, the firm of Scholtz, Sanchez & Co. of New York requested the plaintiffs to purchase a draft, drawn by the former upon Demachy & Seilliere of Paris, France, for $7,000. " To induce the plaintiffs to purchase the draft, Scholtz, Sanchez & Co. exhibited to them a letter of Demachy & F. Seilliere to Scholtz, Sanchez & Co., in which letter Demachy & F. Seilliere promised to accept drafts drawn upon them by Scholtz, Sanchez & Co., up to the limit of 250,000 francs, and upon the security of drafts drawn by Scholtz, Sanchez & Co. upon one Invernizio, of Tortona, Italy, to be furnished therewith. At the time of the request to the plaintiffs to purchase the draft, Scholtz, Sanchez & Co., (the drawers), informed the plaintiffs that they would secure the draft upon Demachy & F. Seilliere * * * by sending to Demachy & F. Seilliere another draft drawn by Scholtz, Sanchez & Co. upon the said Invernizio for

$7,000, and that Invernizio was then indebted to Scholtz, Sanchez & Co. in that amount upon an open account for goods sold, which was the fact. Plaintiffs thereupon agreed to purchase said draft and * * * paid to Scholtz, Sanchez & Co. the sum of $6,662.50, and received * * * the draft." The draft was in the form of a bill of exchange for 35,000 francs, dated May 9th, 1898, drawn on Demachy & Seilliere and payable sixty days after sight to the order of the plaintiffs. "To secure Demachy & F. Seilliere for the acceptance and payment of the above draft, Scholtz, Sanchez & Co., on May 9th, 1898, sent to them a draft upon said Invernizio." This draft was in the form of a bill of exchange for 35,000 francs and was payable to Demachy & Seilliere, sixty days after sight. Scholtz, Sanchez & Co. inclosed this latter draft to Demachy & F. Seilliere in a letter, of the same date; stating, among other things, that they had drawn " against this remittance " in favor of the plaintiffs. The plaintiffs sent the draft, which they had purchased, to their correspondent in Paris; but, before it reached there, Scholtz, Sanchez & Co., the drawers, had failed and had made a general assignment to this defendant for the benefit of creditors. Demachy & Seilliere, learning of their failure, refused to accept the draft, when presented, and returned to this defendant the draft on Invernizio, without having presented it for payment.

Claims were then made by the plaintiffs and by the defendant upon Invernizio; the former for the amount of the draft drawn upon him and the latter for the amount of his indebtedness to Scholtz, Sanchez & Co. Eventually, an agreement was reached, by which the defendant was allowed to collect from Invernizio the moneys owing by him, to be held, distinct from the assigned estate, " until it could be determined who had the better right to the moneys."

The Appellate Division, by a divided court, determined the controversy between the parties in favor of the plain-

16

tiffs and ordered the fund to be paid over to them by the defendant. The defendant appeals to this court from the order of the Appellate Division and from the judgment entered thereupon.

*Charles S. Yawger* and *Harmon S. Graves* for appellant. The Invernizio draft was not for the plaintiffs' benefit, but for that of Demachy & F. Seilliere. The parties did not intend to create a lien or charge upon the debt in favor of the plaintiffs, and the court below erred in deciding otherwise. (*Throop G. C. Co.* v. *Smith*, 110 N. Y. 83; *F. S. Nat. Bank* v. *Yardley*, 165 U. S. 634.)

*George A. Strong* for respondents. Equity demands that this fund be awarded to the plaintiffs. (*Muller* v. *Pondir*, 55 N. Y. 325; 2 Daniels on Neg. Inst. [3d ed.] 124, § 1081; *Thompson* v. *Fairbanks*, 196 U. S. 516, 526; *York* v. *Cassell*, 201 U. S. 344; *Sheldon* v. *Wickham*, 161 N. Y. 500; *Vail* v. *Foster*, 4 N. Y. 312.) The facts show an equitable assignment. (*Throop Co.* v. *Smith*, 110 N. Y. 83; *F. S. Nat. Bank* v. *Yardley*, 165 U. S. 634.) The facts, at the very least, raise a trust, or an equitable lien in plaintiffs' favor. (*Ten Eyck* v. *Holmes*, 3 Sandf. Ch. 428; *Vail* v. *Foster*, 4 N. Y. 312; *Wager* v. *Link*, 134 N. Y. 122; *Underhill* v. *Jordan*, 72 App. Div. 71; *Muller* v. *Pondir*, 55 N. Y. 325; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Hurley* v. *A., T. & S. F. R. R. Co.*, 213 U. S. 126.)

GRAY, J. I think that we should affirm the determination, which the Appellate Division has made of this controversy. The facts show that the plaintiffs did not purchase the draft on Demachy & Seilliere upon the general credit of the drawers, Scholtz, Sanchez & Co.; but upon the security afforded by their collateral draft on Invernizio, their debtor, for the same amount, payable to Demachy & Seilliere and which was remitted to that

firm to secure their acceptance of the draft, according to an arrangement with them. The facts furnished the inference, irresistible as it seems to me, that Scholtz, Sanchez & Co. intended, and that the plaintiffs understood, that a debt, or part of an indebtedness, owing by Invernizio to the former, was to be transferred, and ultimately paid, to Demachy & Seilliere, as a fund to cover the payment of the draft upon them. Summarily stated, the transaction was that the plaintiffs purchased the draft on the French firm, upon the drawers exhibiting to them, to induce the purchase, a letter of the French firm, in which they promised to accept drafts, up to a certain limit, "upon the security of drafts drawn by Scholtz, Sanchez & Co. upon Invernizio, to be furnished therewith;" the drawers, at the time, informing the plaintiffs that they would secure their draft on Demachy & Seilliere, by sending to that firm another draft drawn by them on Invernizio for the same amount against an existing indebtedness of Invernizio, upon an account for goods sold. Had the transaction been effectuated, as intended and understood when entered upon, there would have been a substitution of the liability of Invernizio to Demachy & Seilliere for that of Scholtz, Sanchez & Co. The purpose of the transaction, plainly enough, was to facilitate the collection of the money owing by Invernizio in account. The question is whether, as between the plaintiffs and the general creditors of Scholtz, Sanchez & Co., the equities of the former are superior. The defendant stands in the shoes of Scholtz, Sanchez & Co.; with no greater rights, as against the plaintiffs, than his assignors possessed. If the plaintiffs purchased the draft upon the general credit of the drawers, then, to what end and purpose were all the acts of the latter in inducing the purchase? They had some meaning. I think that the circumstances attendant upon the purchase disclosed that the plaintiffs had parted with their money on the supposed security of a fund, to be created by the transfer of

the drawers to the drawees of the debt owing by Invernizio. In transactions of such a nature, the surrounding circumstances are to be considered by a court of equity in determining the intention of the parties. (*Throop Grain Cleaner Co.* v. *Smith*, 110 N. Y. 83; *Fourth Street National Bank* v. *Yardley*, 165 U. S. 634.)

The equities of the plaintiffs are the greater; because, in giving the value of the draft to the drawers, they enabled them to realize immediately on Invernizio's debt to them. Whether the result of this transaction was to effect an equitable assignment of a fund, it may not be necessary to decide. Any act, which makes an appropriation of a fund, amounts to an equitable assignment of it. (Story's Eq. Jur. sec. 1047.) In my opinion, the circumstances do justify us in giving such a construction in the present case. If, from what took place, the inference is to be drawn that the parties intended that the plaintiffs should be entitled to the security of the draft on Invernizio, I think a court of equity might give effect to the intent by holding that there was an equitable assignment of the debt it was drawn against. Such a construction, to use the language of Judge FINCH in *Tallman* v. *Hoey*, (89 N. Y. 537), when speaking upon the subject of equitable assignments, (p. 539) "proceeds upon a necessity demanded by the justice of the case, and to obviate an injury, or a wrong, which would otherwise occur. Where the holder (of a bill) has parted with nothing, and so loses nothing by the application of ordinary legal rules, no pressure of justice requires the intervention and the help of an equitable doctrine." Whatever may be the doubt as to the application of this equitable rule, I think there should be no doubt that the plaintiffs' case is safely within the equitable doctrine that, where the just and clear rights of a party to payment of a debt from a particular fund can be secured in no other way, the fund, or its proceeds, will be regarded as a trust for his better security. (See *Vail* v. *Foster*, 4 N. Y. 312, 314.)

In view of the full and able discussion of the question by Mr. Justice MILLER, at the Appellate Division, it is unnecessary to say more. I think, under the circumstances surrounding the negotiation of the sale of the draft to the plaintiffs, that the defendant took over the moneys, in question, as a fund charged with a trust for its application to their claim and that the general creditors have no equal right thereto.

The judgment should be affirmed.

CULLEN, Ch. J., WERNER, HISCOCK, COLLIN and CUDDEBACK, JJ., concur; MILLER, J., not sitting.

Judgment affirmed.