COLIN A. STEPHENSON, Respondent, *v.* THE GO-GAS COMPANY et al., Appellants.

(Submitted May 22, 1935; decided July 11, 1935.)

374

*Louis S. Posner* and *Maurice Finkelstein* for The Go-Gas Company et al., appellants. There is no express or implied promise to give a lien to the plaintiff on any properties of any of the defendants; there are no words and no language from which any inference may be drawn of an intention to transfer existing rights to present or future property or funds to the plaintiff; nor are there any such equities pleaded or any fiduciary relations alleged which would justify the creation of any form of equitable lien or assignment known to the law. (*Massachusetts Gasoline & Oil Co.* v. *Go-Gas Co.*, 259 Mass. 585; *Matter of Hawkeye Oil Co.*, 19 Fed. Rep. [2d] 151; *Thomas* v. *New York & Greenwood Lake Ry. Co.*, 139 N. Y. 163; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Wemple* v. *Hauenstein*, 19 App. Div. 552; *Addison* v. *Enoch*, 48 App. Div. 111; *Netling* v. *Netling*, 60 App. Div. 409; *Holmes* v. *Bell*, 139 App. Div. 455; *McAvoy* v. *Schramme*, 219 App. Div. 604; *Matter of Interborough Consolidated Corp.*, 288 Fed. Rep. 334; *Erb* v. *Banco Di Napoli*, 243 N. Y. 45; *Matter of Hill*, 291 Fed. Rep. 922; *Lewis* v. *Canadian Pacific Ry. Co.*, 39 Fed. Rep. [2d] 834; *Sayer* v. *Wynkoop*, 248 N. Y. 54.) There are no fiduciary relations between the plaintiff and any of the defendants nor any other circumstances which would justify an appeal to a court of equity for an accounting. (*United States & Mexican Oil Co.* v. *Keystone Auto*

*Gas & Oil Service Co.*, 19 Fed. Rep. [2d] 624; *Matter of Hawkeye Oil Co.*, 19 Fed. Rep. [2d] 151; *Shantz* v. *Oakman*, 163 N. Y. 148; *Marvin* v. *Brooks*, 94 N. Y. 71; *Salter* v. *Ham*, 31 N. Y. 321; *Lasch* v. *Marcin*, 251 N. Y. 402; *Uhlman* v. *New York Life Ins. Co.*, 109 N. Y. 421; *Pelkey* v. *Pelkey*, 236 App. Div. 55; *Day* v. *Ogdensburgh & Lake Champlain R. R. Co.*, 107 N. Y. 129.)

*Frank Sowers* for Edward M. Wharff et al., appellants.

*Arthur Ofner* and *William H. Freedman* for respondent. The certificates create both an equitable lien upon and a trust in the receipts of the stations. (*Hinkle Iron Co.* v. *Kohn*, 229 N. Y. 179; *St. Regis Paper Co.* v. *Santa Clara Lumber Co.*, 173 N. Y. 149; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Barnes* v. *Alexander*, 232 U. S. 117; *Muller* v. *Kling*, 209 N. Y. 239; *Orton* v. *Tanenbaum*, 194 App. Div. 214; *Nellis* v. *Western Life Indemnity Co.*, 207 N. Y. 320; *Hamer* v. *Sidway*, 124 N. Y. 538; *Hibbs* v. *Brown*, 190 N. Y. 167; *Harwood* v. *LaGrange*, 137 N. Y. 538; *Fairbanks* v. *Sargent*, 104 N. Y. 108; *Conn. Co.* v. *N. Y., N. H. & H. R. R. Co.*, 94 Conn. 13; *Schermerhorn* v. *Gardenier*, 107 App. Div. 564; 184 N. Y. 612; *Sexton* v. *Kessler*, 225 U. S. 90; *Westall* v. *Wood*, 212 Mass. 540.) Judgment creditor status is unnecessary to the maintenance of the action and the complaint states a cause of action. (*Neresheimer* v. *Smyth*, 167 N. Y. 202; *Newton* v. *Jay*, 107 App. Div. 457; *Dittmar* v. *Gould*, 60 App. Div. 94; *Spelman* v. *Freedman*, 130 N. Y. 421; *Farmers Loan & Trust Co.* v. *N. Y. & N. R. R. Co.*, 150 N. Y. 410; *Gray* v. *Richmond Bicycle Co.*, 167 N. Y. 348; *Brownell* v. *Snyder*, 122 App. Div. 246; *Gitler* v. *Russian Co.*, 124 App. Div. 273; *Johnson* v. *Golder*, 132 N. Y. 116; *Long* v. *Majestre*, 1 Johns. Ch. 305; *Colt* v. *Lasnier*, 9 Cow. 320; *National Trust Co.* v. *Gleason*, 77 N. Y. 400; *National City Bank* v. *Waggoner*, 230 App. Div. 88; 255 N. Y. 527; *Mack* v. *Latta*, 178 N. Y. 525; *Loud* v. *Clifford*, 254 N. Y. 216; *Inman* v. *Credit Discount Co.*, 230 App. Div. 505; *Standard Fashion Co.* v. *Siegel-*

*Cooper Co.*, 157 N. Y. 60; *Waldorf Astoria Segar Co.* v. *Salomon*, 109 App. Div. 65; 184 N. Y. 584; *St. Regis Paper Co.* v. *Santa Clara Lumber Co.*, 186 N. Y. 89; *Fur & Wool Trading Co.* v. *Fox*, 245 N. Y. 215.)

LEHMAN, J. The plaintiff has, in his amended complaint, attempted to allege a cause of action for equitable relief. Its sufficiency has been challenged by motion to dismiss the complaint. An order granting that motion was reversed by the Appellate Division " upon the ground that the amended complaint states a cause of action for an accounting at least, and may, upon proper proofs, establish other relief sought." (231 App. Div. 851.) It has granted leave to appeal from its order and has certified questions to us: Does the complaint state facts sufficient to constitute a cause of action against the defendants who have moved for its dismissal?

The primary question arising upon this appeal concerns the nature of the rights of the plaintiff under certificates, issued by Consumers' Service Stations, Consolidated and by Go-Gas Company, denominated " Participation Operation Certificate." The language of these certificates is not identical but, in each, the issuing company in consideration of the receipt of two hundred and fifty dollars agrees to " create " a fund, by setting aside and depositing in a bank, from the receipts of a specified station for the sale of gasoline and other merchandise, one cent on each gallon of gasoline and five per cent on all other merchandise sold, and to " distribute " such fund at stated periods among the holders of certificates until the holder of the certificate shall have received the sum of $500.

The complaint alleges that large sums were realized from sales made by the gas stations referred to in the certificates, but those in control of the corporations failed to create and set aside any fund for the benefit of the certificate holders and omitted to pay and distribute to the registered holders of the certificates a sum equal to the percentage of the receipts of said stations. Damages

caused by breach of contract would, of course, give rise to a cause of action at law against the promisor. The cause of action which the plaintiff seeks to establish is not a cause of action at law for breach of contract but a cause of action in equity for an accounting from the defendants of the receipts of the gas stations, and of their stewardship of the assets of Go-Gas Company which owned these stations. He claims that the holders of certificates have a lien upon the gross receipts arising from the operation of the gas stations, or which may hereafter be received from that operation, and he asks a decree accordingly. He asks further relief, also, against individual and corporate defendants who, he alleges, while in control of the Go-Gas Company, wrongfully wasted its assets and contrived a plan by which Go-Gas Company was driven into insolvency with the aim and purpose of extinguishing the rights, claim and interest of certificate holders and, then, through foreclosure of a mortgage upon the property of Go-Gas Company, and other wrongful acts, transferred its property to a subsidiary corporation controlled by these defendants or some of them. The subsidiary corporation is also made a party defendant.

If the plaintiff has no cause of action against Go-Gas Company other than a cause of action at law for damages, then, it is plain, he has no cause of action in equity against the other defendants, who, it is said, have wasted its assets and wrongfully gained possession of its property, including the gas stations referred to in the certificates. The plaintiff is not a judgment creditor of Go-Gas Company and cannot at this time assert a derivative cause of action for alleged wrong to that corporation. He had no personal relations with these other defendants. They never voluntarily assumed any fiduciary duty to him. Only if they wrongfully interfered with fiduciary duties owing by Go-Gas Company to the plaintiff and others similarly situated or if they wrongfully came into possession of

property of that company in which its certificate holders had an equitable interest or lien, does the complaint state a cause of action against these additional defendants.

Under the terms of each certificate, the Go-Gas Company received $250 as the consideration for its promise to create a fund by setting aside a stipulated part of the proceeds of sales of a specified gas station and to distribute that fund among the holders of record of the certificates until each received the sum of $500. It is clear that the $250 received became the absolute property of the Go-Gas Company, and that the parties intended that the certificate holders should have an equitable interest in the fund to be created by setting aside a portion of the receipts of the gas station; but no such fund was created. Then the question is whether the parties intended, also, that there should be an equitable assignment of the stipulated part of the receipts of the gas station if and when such receipts came into the possession of the obligor, even before any part of such receipts were set aside and deposited in a bank.

We use the term " equitable assignment " in its broadest aspect, to include a present transfer of future property, a present contract to sell or assign future property, or a present agreement that a right in the nature of a lien should attach to the future property as security for the obligation embodied in the certificate. (Cf. 3 Pomeroy on Equity Jurisprudence [4th ed.], § 1290.) The rights of the parties must be determined by the language of the certificate. To create an " equitable assignment," the intention must appear on the face of the instrument in express language, or by necessary implication. The certificate, as we have said, creates, it is plain, an equitable assignment of the future fund which the obligor agreed to create by setting aside a portion of the proceeds of sales of gasoline. It is difficult to find in the language of the certificate any intention or agreement to assign an undivided part of such proceeds, as they were received.

We have said that in transactions of such a nature the surrounding circumstances are to be considered by a court of equity in determining the intention of the parties. If, from what took place, the inference is to be drawn that the parties intended to make a present appropriation of future proceeds as security for the ultimate performance of the obligation, a court of equity will give effect to that intent. "Such a construction, to use the language of Judge FINCH in *Tallman* v. *Hoey* (89 N. Y. 537), when speaking upon the subject of equitable assignments (p. 539), 'proceeds upon a necessity demanded by the justice of the case, and to obviate an injury, or a wrong, which would otherwise occur.'" (*Muller* v. *Kling*, 209 N. Y. 239, 244.) Here we find no such necessity.

In two cases, arising in bankruptcy, Federal courts in Pennsylvania and Delaware have considered the effect that should be given to certificates which used substantially the same language. In *United States & Mexican Oil Co.* v. *Keystone Auto Gas & Oil Service Co.* (19 Fed. Rep. [2d] 624, 625, 626) the holders of the certificates claimed that funds in a bank, which were derived from sales of gasoline and other merchandise "are a trust fund specially created and earmarked for them, and that, immediately upon deposit in the bank concerned, the sums so deposited became their money, which neither the corporation nor its general creditors had any right to claim." That claim was rejected by the court. "There is no special equity vested in these certificate holders that should be protected. There is no special equity founded on the relation of these certificate holders to the funds on deposit in the several banks in question that should be protected. The fund in bank bears no special relationship to their money contributions to the company. The money in bank came from the sale of general assets of the company — *i. e.*, gasoline and other merchandise — in the regular and ordinary course of business. To impress this fund with a special trust in favor of these

certificate holders would be wrong and a fraud on general creditors." That conclusion was approved and followed in the case of *Matter of Hawkeye Oil Co.* (19 Fed. Rep. [2d] 151).

We are constrained to reach the same conclusion here. The original certificate holders contributed moneys to be used as capital by the corporation in conducting a mercantile business. The moneys so contributed were not intended to create a debt, and the corporation never promised to repay a debt. Those who contributed the funds expected, not reimbursement to be secured by assignment of a portion of the proceeds of sales made by the corporation, but a profit of one hundred per cent to be paid out of a fund to be created from the proceeds of sales. There is no express agreement for an assignment of an undivided part of the future proceeds to be applied upon the certificates. The contract of the parties may fairly be construed to mean that the application should be made only when a portion of the proceeds was set aside to create a fund in accordance with the terms of the certificate. A construction which would give the certificate holders a lien upon, or a special right to, the proceeds of sales when received would work injustice upon unpaid merchandise creditors. Whether a court of equity could give effect even to the plain language of a contract which would work such injustice need not now be decided. We place decision upon the ground that here no such contract was made. Analysis of the cases upon which the plaintiff relies to sustain his position would serve no purpose, except to demonstrate that here the premises are lacking upon which the conclusions were drawn in those cases. As stated in *Matter of Hawkeye Oil Co.* (*supra*, p. 152), here " the difficulty exists because the contract seems to give rise to rights or incidents hitherto probably not brought into combination, and which, when severally considered, have been recognized as peculiar to different, even contrasting relationships."

Though, in the bankruptcy cases cited above, the courts were called upon to decide only whether the certificate holders could claim a special right to the proceeds of the bankrupt corporation, and if that claim were rejected, whether they could share in the assets of the corporation with its general creditors, the court, in the case of *Matter of Hawkeye Oil Co.* (*supra*), said in its opinion: " they are not creditors, but are coadventurers with the stockholders, hazarding their investment upon the continued operation, and hence upon the success, of the company." Based upon that statement, argument is now made that, as coadventurers, the relationship of the certificate holders to the corporation was fiduciary, and that they are entitled to an accounting in equity from the corporation and those who dominated its affairs and wasted its assets. That does not follow, nor can precedent be found for an equitable accounting in such case.

The certificate holders were coadventurers with the stockholders only in the sense that their investment, like the investment of stockholders, was hazarded upon the success of the company. The holders of certificates were not sleeping partners of the corporation or its stockholders. They had no share in its capital, they had no share in its profits or losses. All that they had was a promise of the corporation that, so long as the operation of the corporation continued, a stipulated portion of the proceeds would be set aside for redemption of the certificates. In the relationship of obligor and obligee good faith may be required of both; nevertheless the relationship of trust upon which a right to an accounting in equity depends does not arise from a promise alone. There must be something analogous to a trust *res* — some business, property, income, profits or moneys in which the person asking the accounting has an equitable interest. Since that is lacking here, the plaintiff has failed to state facts sufficient to state a cause of action to invoke the equitable powers of the court.

The order of the Appellate Division should be reversed and those of the Special Term affirmed, with costs in this court and in the Appellate Division. The certified questions should be answered in the negative. (See 268 N. Y. 666.)

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.