## NATIONAL UNION BANK v. EARLE.

(Circuit Court, E. D. Pennsylvania. April 3, 1899.)

BANKS—APPROPRIATION OF FUND—PAYMENT OF CHECK BEFORE SUSPENSION OF DRAWER.

Where a Philadelphia bank, being indebted to a New York bank for collections made, remitted by its cashier's check on another New York bank, with which it had a sufficient deposit, which check was duly presented and paid through the clearing house, the transaction constituted a complete appropriation of the fund to the creditor bank, and its ownership is not affected by its restoring the money to the bank paying the check on the same day, on the demand of the latter, made on learning of the suspension of the drawer, which return was required under such circumstances by the rules of the clearing house, of which both banks were members, but only for the purpose of protecting the paying bank, in case the payment should prove to have been unauthorized; nor will the fact that such bank, without right, paid the money to the receiver of the insolvent bank, prevent its recovery from the receiver by the payee of the check.

On Demurrer to Bill.

Stern & Rushmore and A. H. Wintersteen, for complainant.
Asa W. Waters and W. H. Addicks, for respondent.

DALLAS, Circuit Judge. This is a general demurrer to a bill which prays a decree for $21,145.43. The facts properly pleaded, and therefore admitted, are well summarized in the complainant's brief as follows:

"The Chestnut Street National Bank, a Philadelphia institution, was a collecting agent of the complainant, the National Union Bank, of the city of New York. The arrangement between the parties required that the Chestnut Street National Bank should remit to the National Union Bank on Wednesday of each week for the balance as shown by its books to be due to the latter at the close of business on the preceding day, and this custom was invariably followed. On December 22, 1897, the Chestnut Street National Bank held, as such collecting agent, the proceeds of collections made by it for the National Union Bank in the amount of $21,103.43. The Chestnut Street National Bank, having at that time funds on deposit with the National Bank of the Republic, in the city of New York, more than sufficient to satisfy its liability to the complainant, as aforesaid, 'and desiring to apply said funds and appropriate the same to the satisfaction of said liability, drew its cashier's check for that purpose on the National Bank of the Republic against said funds, in the amount of $21,103.43, and forwarded the same to the National Union Bank, and immediately upon forwarding debited itself and credited the National Bank of the Republic, and credited itself and debited the National Union Bank with the amount of said draft.' The said cashier's check was received by the complainant early on the morning of the 23d day of December, 1897, and was presented by it at 10 o'clock on that morning to the National Bank of the Republic, at the clearing house in the city of New York, of which both the said National Bank of the Republic and the said National Union Bank were members, 'and the said check was duly paid by the said National Bank of the Republic through said clearing house at that time.' It appears that on that day (December 23, 1897) the comptroller of the currency required the Chestnut Street National Bank to close its doors and suspend business because of its insolvency. This fact, however, was not known either to the complainant or to the National Bank of the Republic at the time the cashier's check in question was received by the former and presented to the latter. Shortly before 11 o'clock on that day the National Bank of the Republic, having received unofficial information that the Chestnut Street National Bank had suspended business, returned the said cashier's check to the National Union Bank, indorsed 'Bank suspended,' and requested the repayment thereof, whereupon the Na-

tional Union Bank (acting, however, solely in pursuance of a custom prevailing among the clearing-house banks in New York in cases of such reclamation, 'to pay the amount reclaimed at once, and to adjust the merits of the claim afterwards'), repaid to the National Bank of the Republic the amount of the check. Thereafter the complainant demanded from the National Bank of the Republic the return of the money so restored to that bank, which refused, however, to repay the same, or any part thereof, and thereafter remitted the said funds to the respondent, who had been appointed the receiver of the Chestnut Street National Bank. Thereupon the complainant duly demanded the return of said money from the respondent, but without avail."

That the delivery of a check will not, of itself, operate as an assignment, must, for this court at least, be regarded as settled. But where the delivery of the check was accompanied by, or has been connected with, circumstances from which it may be reasonably inferred that an appropriation of the fund, to the extent of the amount of the check, was intended or, if such an appropriation has been actually effected, it is equally well settled that the transaction, as a whole, constitutes an equitable assignment pro tanto. From "the conduct of the parties, the nature of their dealings, and the attendant circumstances" in this case, I think that, under the authorities, a purpose by the Chestnut Street Bank to appropriate the fund in question must be implied, and also that, when "the said check was duly paid," that purpose became fully executed and the appropriation was consummated. Bank v. Yardley, 165 U. S. 644, 17 Sup. Ct. 439; Clark v. Iron Co., 39 U. S. App. 754, 26 C. C. A. 423, and 81 Fed. 310.

The Bank of the Republic paid the check by an adjustment of balances effected in accordance with the rules of the clearing house, of which it and the Union Bank were members; but in legal contemplation the transaction was the same as if the payment had been specifically made. The Union Bank received a fund which was absolutely its own. It returned this fund to the National Bank of the Republic, upon reclamation made by the latter, in pursuance of the contractual obligation, which the Union Bank had assumed, to comply with the requirement of the clearing house that such reclamations should be honored. The Chestnut Street Bank, not being a member of that organization, could not have invoked this requirement, and in point of fact had nothing whatever to do with the return of the money. The situation and motives of the two New York banks are obvious. The Bank of the Republic had, without knowledge or notice of the insolvency of the drawer, paid a check of a national bank. At a later hour it learned of the failure of that bank. It then apprehended that some question might arise respecting the legality of the payment which it had made, and, in consequence, it exercised its right to demand that the money should be restored to its keeping "at once, and to adjust the merits of the claim afterwards." This demand was, of necessity, complied with; but by this compliance the Union Bank did not disclaim or affect its title to the fund. The Bank of the Republic clearly did not acquire, and did not claim to have, any beneficial interest in it. It took it as trustee for the actual owner, and held it to await a proper determination of any doubt which might have been supposed to exist respecting its ownership. There never was any such determination, yet the Bank of the Republic transferred

the money to the receiver of the Chestnut Street National Bank, who was not entitled to it, and, apparently, in total disregard of the rights of the Union Bank, whose money it really was.   If it were still in the custody of the Bank of the Republic, its duty to pay it over to the Union Bank would, I think, be unquestionable; and, in my opinion, a court of equity, avoiding unnecessary circuity, should now require the defendant, into whose possession the fund has been traced, to execute the trust which adheres to its possession by relinquishing that fund to the plaintiff.

The demurrer is overruled, and the defendant is assigned to answer sec. reg.