## NATIONAL MOTOR VEHICLE COMPANY ET AL. *v.* KELLUM, ADMINSTRATRIX.

[No. 22,387. Filed June 18, 1915. Rehearing denied February 24, 1916.]

1. NEGLIGENCE.—*Complaint.—Sufficiency.—Contributory Negligence.* —Although a complaint in a negligence case may be subject to demurrer where its averments disclose that plaintiff was guilty of contributory negligence, to render it insufficient on that ground the facts averred must be subject to no other inference than that of contributory negligence. p. 464.

2. NEGLIGENCE.—*Pleading.—Independent Causes of Injury.*—A complaint for the death of a mechanician who was killed while riding in an automobile in a race, charging negligence in the defective construction and maintenance of the track, the condition of which was known to each defendant, that while the automobile was being propelled on and around said track the same ran into and against an uneven, defective and dangerous place therein, which caused the rubber tire on said automobile to burst and the said automobile to lurch and turn, so that decedent was violently thrown to the ground, that the tires were worn and defective, etc., and that if the track had been skilfully and carefully constructed and maintained in good condition, such defective tires would not have burst and decedent would not have been killed, etc., charged two independent acts of negligence, so that a finding against plaintiff that the tires were not defective did not preclude recovery on the negligence alleged with reference to the condition of the track. p. 464.

3. NEGLIGENCE.—*Pleading.—Independent Acts of Negligence.*—A complaint in one paragraph may properly charge two or more independent acts of negligence, and proof of one of such acts warrants a recovery. p. 464.

4. MASTER AND SERVANT.—*Negligence.—Verdict.—Answers to Interrogatories.—Contributory Negligence.*—In an action for the death of a mechanician riding in an automobile in a race, brought against his employer and the proprietor of the race track, answers by the jury to interrogatories submitted by defendants that decedent rode over the track in practice preparatory to the race, etc., that it was his duty as mechanician to observe the tires and make repairs when necessary, that the car ran off the track because of rough track and bursted tire, that the track was so rough and uneven as to make it inherently dangerous to a man riding thereon in an automobile at a high rate of speed, etc., did not overcome the verdict for plaintiff as showing that decedent knew of the dangers, on the theory that answers to other interrogatories submitted by defendant showing that decedent had no opportunity to know that the track was de-

fective must be disregarded because of defective form of the in-
terrogatories.   pp. 465, 468.

5.   TRIAL.—*Answers to Interrogatories.*—*Disregarding Answers.*—
Where the answers to interrogatories to the jury are responsive to
the questions, the fact that they were not such as were anticipated
furnishes no reason for the court to consider a plea by the authors
of the questions to disregard the answers because of the defective
form of the interrogatories.   p. 468.

6.   MASTER AND SERVANT.—*Injuries to Servant.*—*Verdict.*—*Answers
to Interrogatories.*—*Assumption of Risk.*—In an action for the death
of a mechanician in charge of an automobile entered in a race by
his employer where the complaint averred that decedent had no
knowledge of the defective condition that produced his death, the
general verdict for plaintiff exonerated decedent from any knowl-
edge, actual or constructive, and there being nothing in the jury's
answers to interrogatories to antagonize the general verdict on the
question of such knowledge, defendant's contention that the
answers to interrogatories showed affirmatively that decedent
assumed the risk cannot prevail, since the doctrine of assumed risk
is grounded on the servant's knowledge, express or implied, of the
existence of the danger.   p. 468.

7.   MASTER AND SERVANT.—*Negligence.*—*Evidence.*—*Contributory
Negligence.*—*Knowledge of Defects.*—In an action for the death of a
mechanician riding in an automobile in a race, brought against his
employer and the proprietor of the race track, where there was evi-
dence to justify the finding of negligence against each defendant
and to show that the injury was caused by a negligent defect in
the speedway of which defect each defendant had previous know-
ledge, the verdict for plaintiff could not be disturbed on the theory
that the defect was obvious and that decedent's contributory
negligence was affirmatively shown, in view of evidence as to the
nature of decedent's duties, the speed of the car, and other cir-
cumstances from which the court could not say that the jury was
without warrant in finding that decedent was without knowledge,
actual or constructive.   p. 468.

8.   MASTER AND SERVANT.—*Injuries to Servant.*—*Assumption of
Risk.*—In an action for the death of a mechanician riding in an
automobile in a race, brought against his employer and the pro-
prietor of the race track, due to a latent defect in the road, where it
was not decedent's duty to inspect the roadway for latent defects,
and he did not discern and had no opportunity to discover such de-
fect, he cannot be held to have assumed the risk.   p. 472.

9.   MASTER AND SERVANT.—*Injuries to Servant.*—*Fact of Employment.*
—In an action for the death of a mechanician riding in an auto-
mobile in a race, brought against his employer and the owner of the
track, evidence showing that decedent was employed to ride in an
automobile which, after starting, was withdrawn from the race,
and that subsequently the mechanician in another automobile in

the race, belonging to decedent's employer, became sick, and decedent took his place without direction to do so, but in the presence of an executive officer of the employer who observed the act and the subsequent running of the automobile for thirty miles preceding the accident, warranted the jury in finding that decedent's service while riding the latter automobile was a continuation of the same character of service, as contemplated by the parties, as that rendered when decedent was riding in the first automobile. p. 472.

From Hancock Circuit Court; *Earl Sample,* Judge.

Action by Carrie Kellum, administratrix of the estate of Claude S. Kellum, deceased, against the National Motor Vehicle Company and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*John S. Berryhill, Korbly & New, Charles Martindale* and *Cook & Cook,* for appellants.

*John W. Kern, Eph Inman, Charles L. Tindall* and *Alexander G. Cavins,* for appellee.

MORRIS, J.—Complaint by appellee for damages, for negligently causing death, against the appellants, National Motor Vehicle Company and Indianapolis Motor Speedway Company, corporations. For convenience, appellants are hereinafter designated as vehicle company and speed-. way company, respectively. Each appellant's demurrer to the complaint was overruled. There was a trial by jury, with certain facts specially found, and a general verdict for appellee, in the sum of $7,000. Each appellant's motion for a new trial, and for judgment on the jury's answers to interrogatories, was overruled, and judgment was rendered on the general verdict. The complaint alleges, in substance, that on, and previous to August 21, 1909, vehicle company, was engaged, in Indianapolis, in the manufacture and sale of automobiles, and had theretofore employed Claude Kellum, decedent, age

34, to test and repair automobiles manufactured and sold by it; that previous to August, 1909, speedway company organized to. conduct automobile speed contests, and for other germane objects; that pursuant to such purposes, it purchased ground in Marion County and constructed thereon a race track or speedway, which was enclosed with tight board fences so as to enable it to charge admission fees for spectators of proposed automobile speed contests, or races; that previous to August, 1909, it advertised races at the speedway to continue from August 16, to August 21, 1909, and in such advertisement represented to the public and contestants that the track was in excellent condition and suitable for speed contests; that prior to August 16, 1909, decedent Kellum read the advertisements, and relied on the truth of the representations therein; that on Monday, August 16, 1909, Kellum was at Youngstown, Ohio, engaged there in the duties of his said employment, and received from vehicle company a telegraph message as follows: "Be in Indianapolis Wednesday morning early without fail"; that in obedience to the message, Kellum arrived in Indianapolis Wednesday morning, August 18, and reported to vehicle company; that at that time, the advertised races were in progress; that vehicle company was then a participant in the races, and had several automobiles entered in the contests, and that various like manufacturers were participating; that the contests were of speed, and durability of machines, which were heavy and driven at great speed; that at that time, few such races had been held, and Kellum was not familiar with the method of conducting them. The averments of negligence are as follows: "That the said race track or speedway so provided by said defendant, Indianapolis Motor Speedway Company, was negligently, care-

lessly and unskilfully constructed by it, in that it was constructed of materials not suitable or sufficient to bear thereon the rapid travel of heavy automobiles and motor cars; that during said contests on the 19th and 20th days of August, 1909, the said race track and speedway by reason of the races aforesaid, had become defective and uneven, with many holes therein, and dangerous, and that said Indianapolis Motor Speedway Company on the 21st day of August, 1909, did negligently and carelessly suffer and permit said race track and speedway to continue to remain in said defective and dangerous condition. That such defective and dangerous condition of said race track and speedway was known to both of said defendants, but was not at any time known to plaintiff's said decedent. That on Saturday, August 21, 1909, the said contests and races were still in progress; that a crowd of spectators numbering over 30,000 people was in attendance and that the excitement and interest of all the officers of defendant corporations and of the said spectators were intense. That on the afternoon of said day, after one or more contests had been finished, another race between said competing automobiles and motor cars was in progress; that on each of said racing vehicles there was a driver and mechanician. That the defendant, National Motor Vehicle Company had caused one of its automobiles or motor cars to be entered in said race, and that said vehicle carried in said race two of the employes of said last named defendant as driver and mechanician respectively. That the services of such driver and mechanician were necessary in conducting said vehicle through said race; that after said race had commenced and said last named vehicle had proceeded therein for some distance, the mechanician thereon fainted, and became disabled, and it was

necessary that said defendant National Motor Vehicle Company should immediately procure the services of some person to take the place of the said mechanician who had become disabled; that said last named defendant, by its officer thereunto duly authorized, whose commands plaintiff's decedent was bound to obey, ordered plaintiff's decedent to enter said automobile or motor car, and perform the duties of said mechanician during said race; that plaintiff's decedent in obedience to said orders, entered said vehicle, and that said vehicle again started in said race, at a high rate of speed, being guided by the said driver, who was then and there the agent and servant of said last named defendant, and that while said vehicle was so being propelled on and around said race track and speedway at such high and dangerous rate of speed, the same ran into and against an uneven, defective and dangerous place therein, so carelessly and negligently allowed and permitted therein as aforesaid, by said Indianapolis Motor Speedway Company, and that said rough, uneven, defective and dangerous place in said track or speedway, caused the rubber tire on said vehicle to burst and the said vehicle to lurch and turn, so that plaintiff's decedent was violently thrown therefrom to the ground and instantly killed. That at all times herein mentioned, plaintiff's decedent was acting with due care and without any negligence. And plaintiff further says, that the said vehicle in which plaintiff's decedent was so riding, at the time of his death, had been so theretofore used, that the tires thereon were worn, weak, and defective, which fact was known to the defendant National Motor Vehicle Company at all times on said 21st day of August, 1909, but was not known then or at any time by plaintiff's decedent. That the tires on said automobile or motor car should have been changed

and replaced with sound and unworn tires before entering said vehicle in said race, and that if said tires had been so replaced, and had not been weak and defective as aforesaid, plaintiff's decedent would not have been thrown from said vehicle and killed. *And plaintiff further avers that if said race track and speedway had been skillfully and carefully constructed and had been maintained in good condition by the defendant Indianapolis Motor Speedway Company with reasonably even surface, the said defective tires of said vehicle in which plaintiff's decedent was riding as aforesaid, would not have burst and said decedent would not have been killed.* (Italics ours.) That both of said defendants had knowledge of all the facts hereinbefore recited as to the defective and worn condition of said track and speedway; and of the defective and worn condition of the tires on said vehicle, or by the exercise of reasonable diligence might have known of the same, but that the plaintiff's decedent did not have such knowledge as to any defects either in said track or in said vehicle in which he was so riding. That both of said defendants knew and appreciated the dangers of riding in automobiles or motor cars on a track or speedway such as was maintained as aforesaid, but that plaintiff's decedent was not accustomed to such racing, did not have information as to the true condition of either the said track or the said vehicle, and did not and could not appreciate the dangers aforesaid. And plaintiff says that the death of the said Claude S. Kellum was directly and proximately, negligently and carelessly caused by the acts of negligence of said defendants as hereinbefore charged."

It is claimed by speedway company that its demurrer to the complaint should have been sustained because contributory negligence is affirmatively

shown. While it is true that, notwithstanding our statute which casts on the defendant the burden of proving contributory negligence, a complaint may so aver such negligence as to render it subject to demurrer, this result follows only where the facts averred are not subject to any inference other than that of contributory negligence. *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 233, 74 N. E. 1081. The complaint does not show contributory negligence.

It is urged by each appellant that the court erred in overruling the motions for judgment on the jury's answers to interrogatories. By these answers the jury finds that there was no defect in the tires. It is appellant's theory that the complaint charges an injury caused by two dependent and combined acts, and, the jury having found against appellee on one of the dependent acts, appellants were entitled to judgment. *Terre Haute, etc., R. Co.* v. *McCorkle* (1895), 140 Ind. 613, 40 N. E. 62. Appellee seeks to answer this by showing that the complaint charges two independent acts of negligence, and that the answers are not in conflict with the first one averred. It will be noted that the complaint first charges an injury caused by a defective track, the condition of which was known to each appellant. This charge of negligence is complete within itself, and is followed by a charge of negligence caused by defective tires, in which appears the averment which we have italicized. At this time it is settled beyond controversy that a complaint in one paragraph may properly charge two or more independent acts of negligence, and proof of one of such acts warrants a recovery. *New York, etc., R. Co.* v. *Callahan* (1907), 40 Ind. App. 223, 225, 81 N. E. 670. We are of the opinion that the italicized

clause was not intended by the pleader to qualify the first charge of negligence in relation to the defective condition of the track, but was designed only to apply to the second charge in relation to defective tires; that the two acts of negligence charged are not dependent, and that appellee might recover though the jury found that there was no defect in the tires. *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143, 73 N. E. 91.

It is further urged by appellants that the answers to interrogatories show that decedent was guilty of contributory negligence. At appellants' request seventy-seven interrogatories were submitted. The answers to the interrogatories show, among other things, that decedent was thirty-four years old, and, previous to the races was employed by vehicle company to repair and test motors, and was accustomed to driving them, and, in 1908, had driven in a race at Savannah, Georgia; that he agreed, but not voluntarily, with the vehicle company to ride, as mechanician, in one of its automobiles to be driven by one Aitken, in a 300-mile race, on the track in question, on August 21, 1909; that the company agreed to give him $100, as a special compensation for such service; that decedent was at the track on August 20, 1909; that on August 21, 1909, he rode over the track in practice preparatory for the race; that on the night before the time set for the 300-mile race, Newby, an executive officer of the vehicle company, in decedent's presence, said to the mechanicians and drivers in its employ that if they preferred to withdraw, and not start in the race, he was willing that they should not start; that on August 21, decedent rode on the track in a car with Aitken, a distance of 105 miles, at a rate of 100 miles in 91 minutes and 49.1 seconds;

that said car was withdrawn from the race, because of some mechanical difficulty, and decedent then entered another car of the vehicle company, driven by one Merz, and there took the place of a disabled mechanician; that it was Kellum's duty, as mechanician, to observe tires and make repairs when necessary; that the car driven by Merz, while running at a high rate of speed in the race, ran off the track because of rough track and bursted tire; that at that place there were defects in the track, consisting of ruts and holes, of which the officers of each appellant knew, but there was no evidence that decedent knew thereof. By interrogatories Nos. 62, 63 and 64, the jury found that on August 19, 20 and 21, 1909, the speedway track was so uneven and rough as to make it inherently dangerous and extraordinarily hazardous to a man riding thereon in an automobile at a high rate of speed in a race with other automobiles.

Interrogatories Nos. 65 to 71 inclusive, and answers thereto, were as follows: "65. Was the track of the Indianapolis Motor Speedway mentioned in the complaint, on the entire day of August 21, 1909, so rough and uneven as to make it inherently dangerous and extraordinarily hazardous to a man riding in an automobile on said track at a high rate of speed in a race with other automobiles? Yes. 66. Did Claude Kellum, on August 21, 1909, and prior to entering the car in which he was killed, with Charles Merz, ride around the track of the Indianapolis Motor Speedway Company mentioned in the complaint, in an automobile at a high rate of speed? Yes. 67. Did Claude Kellum, the decedent, on August 21, 1909, by riding around the track at the Indianapolis Motor Speedway Company, mentioned in the complaint, in an automobile prior to the time he entered the car in which he

was killed, with Charles Merz, have an opportunity to learn and know that said track was so rough and uneven as to make it inherently dangerous and extraordinarily hazardous for him to ride on said track in the race in which he was killed? No. 68. Did Claude Kellum, the decedent, at the time he entered the car in which he was killed, with Charles Merz, prior thereto, have an equal opportunity with defendant, National Motor Vehicle Company to know that the track of the Indianapolis Motor Speedway, mentioned in the complaint, was so rough and uneven as to make it inherently dangerous and extraordinarily hazardous to him to ride in the race that was then on? No. 69. Did Claude Kellum, the decedent, at the time he entered the race in which he was killed, with Charles Merz, and prior thereto, have an equal opportunity with the defendant National Motor Vehicle Company to know and comprehend the danger of riding in said car in said race? No. 70. Did Claude Kellum have an opportunity to know, while the three-hundred-mile race was on and prior to his getting into the car with Charles Merz, that the track was so rough, uneven, and defective as to make it dangerous for him to ride in said race in the car with said Merz? No. 71. Did Claude Kellum, while riding in the three-hundred-mile race in the car with Charles Merz and a sufficient length of time prior to the accident for Merz to have stopped said car, have an opportunity to know that said track was so uneven and defective as to make it dangerous to him to remain longer in said race? No."

Appellants contend that it must be held that decedent did know of the dangers, notwithstanding the answers to interrogatories Nos. 67 to 71 inclusive; that such answers must be deemed conclusions rather than findings of ultimate facts. The

answers were responsive to the interrogatories that appellants submitted. Manifestly they were not such as were anticipated by appellants, but that furnishes no reason why a court should consider a plea by the authors of the questions to disregard the answers because of the defective form of the interrogatories. *Indianapolis Coal Traction Co.* v. *Dalton* (1909), 43 Ind. App. 330, 335, 87 N. E. 552. The general verdict acquitted decedent of contributory negligence, and the facts found specially are not in irreconcilable conflict therewith.

Appellant, vehicle company, claims further that its separate motion for judgment should have been sustained because the answers to interrogatories affirmatively show that decedent assumed the risk of the danger. The doctrine of assumed risk is grounded on the servant's knowledge, express or implied, of the existence of the danger. *Standard Forgings Co.* v. *Saffel* (1911), 176 Ind. 417, 427, 96 N. E. 321, and authorities cited. The general verdict exonerated appellee's decedent of any knowledge, actual or constructive, of the defect in the track which caused the accident. The facts specially found on the question of knowledge of danger, do not antagonize the general verdict.

Each appellant claims error because the court overruled its separate motion for a new trial, which averred that the verdict was contrary to law and not supported by sufficient evidence. The finding of negligence against each appellant is justified. There was ample proof that decedent's injury was proximately caused by a negligent defect in the speedway of which defect each appellant had previous knowledge. However, it is earnestly contended by the appellants that the evidence affirmatively discloses Kellum's guilt of con-

tributory negligence, because, as claimed, the defect was obvious. The law imposed on Kellum the duty of using ordinary care to avoid injury, and the *quantum* of care required was proportioned to the danger. It was his duty to employ his vision and other senses in discovering danger, and if he failed to see a defect which, in the exercise of ordinary care he should have seen, he was chargeable with constructive knowledge of the defect. Was the defect in question obvious to Kellum — one that was apparent to him in the exercise of ordinary observation under the particular circumstances, or which was or should have been disclosed to him by the use of his vision and other senses? *Dillenberger* v. *Weingartner* (1900), 64 N. J. L. 292, 45 Atl. 638. There was direct evidence that on Wednesday, Thursday, and Friday, August 18, 19 and 20, ruts and holes formed in the track, and, on the night of each of said days, speedway company had large forces of men and teams employed in repairing it and attempting to make it safe and serviceable, but there is no direct evidence that Kellum observed any defect in the track or had any knowledge thereof, or knowledge of the repair work. Kellum was at the grounds on Wednesday, Thursday, Friday and Saturday. On either Thursday or Friday he rode on the track, for a short time, in a race. An occupant of an automobile, running seventy miles per hour, can feel the vibrations of the car, running on a smooth surface, so one witness testified. The evidence shows that Kellum earned from $18 to $21 per week at his regular employment with vehicle company; that on Wednesday, August 18, it was agreed between him and the company that in consideration of $100 Kellum would ride in the "Wheeler-Shebler" 300-mile race scheduled for the afternoon of August 21; that he was to ride as mechanician for vehicle com-

pany, driver John Aitken; that pursuant to the agreement, he entered the Aitken car for the race, and after the car was driven a distance of 105 miles around the track, which was two and one-half miles long, it was withdrawn from the race because of a mechanical difficulty; that vehicle company, had another car in the same race, driven by one Merz, with one Lime as mechanician; that Lime became ill shortly after Aitken's car was withdrawn, and Kellum took Lime's place in the Merz car, which then ran a distance of more than thirty miles before the accident; that each of the cars in which Kellum rode as mechanician ran at a speed of more than seventy miles per hour; that Kellum's duties as mechanician required him to look over the mechanical parts of the car, to use a pump to regulate air pressure in the oil tank and to watch the gauge to see when pumping was needed, to watch for racing cars in the rear, and to keep a watch on the two rear, and left front, tires; that in riding he wore goggles over his eyes, for protection against insects and dirt; that there was much dust and oil smoke in the air, while racing, and the accumulation of oil and dust on the goggles required frequent wiping to enable the mechanician to see the track. In view of his duties, the speed of the car and other circumstances disclosed, we can not say that the jury was without warrant in finding that Kellum was without knowledge, actual or constructive, of any serious defect in the track. It is suggested further, however, that on Friday night before the accident Kellum was warned of the danger by Mr. Newby, executive officer of the vehicle company. The evidence shows that at the time Mr. Newby had a meeting with the company's drivers and mechanicians who were to participate in the next day's races and told them that they were at liberty to stay out of the Saturday races if

they wished. Three witnesses—Newby, Merz and Aitken testified concerning what was said at this meeting. Newby and Aitken testified that Newby told those present, including Kellum, that the track was rough—that they had had a good day Friday—that there had been some accidents—and that if any of them did not wish to enter the Saturday races they were free to stay out. In Merz' testimony concerning the meeting there is no reference to any thing said by Newby about the roughness of the track. It was for the jury to determine the credibility of the witnesses, and weigh their testimony and we can not say but that the jury was warranted in finding that at the meeting there was no suggestion of any defect in the track. It is also urged that the uncontradicted evidence shows that Kellum was warned of defects in the track by driver Aitken while driving 105 miles in the race. Aitken testified that he remarked to Kellum that the way was "cutting up", but he does not testify that Kellum made any reply. Kellum's cap had ear flaps, and, considering the noise of the engines, we can not say that the jury was unjustified in finding that Kellum never heard the remark. The burden of proving contributory negligence was on the defendants. The evidence on the subject was oral. The jury heard and saw the witnesses. It was not compelled to accept as true all uncontradicted statements of appellants' witnesses. Indeed, appellee claims that an examination of their testimony, as it appears in the record, exhibits bias and prejudice in favor of appellants. The work which Kellum entered on was of course highly dangerous, but we do not understand appellants as claiming that acting as mechanician in this race necessarily involved danger so obvious and imminent that this court should say that no prudent person would undertake the work. 26 Cyc 1256.

We have examined the evidence on which appellants rely to show contributory negligence, and are of the opinion that we are not warranted, because thereof, in setting aside the verdict.

It is further urged by vehicle company, that the verdict is contrary to law because the evidence shows that Kellum assumed the risk. The jury by 8. its general verdict found the proximate cause of the injury to be a latent defect in the road which Kellum did not discern and had no opportunity to discover. It was not Kellum's duty to inspect the roadway for latent defects. 26 Cyc 1251. Without setting out the evidence on which vehicle company bases its contention, it is sufficient to say that in our judgment the verdict finding that Kellum did not assume the risk is justified under the recognized rules pertaining to trial by jury.

Vehicle company claims that there is no evidence to show that Kellum, while riding in the Merz car, was doing so pursuant to this appel- 9. lant's command, as alleged; that Kellum was ordered only to ride in the Aitken car, and that when that car was disabled, the special service ceased; that the evidence affirmatively shows that Kellum entered the Merz car as a volunteer without any order or direction from the vehicle company. Mr. Newby, an executive officer of this appellant, with authority to represent it in the management of its vehicles entered in the race, was within thirty to sixty feet of the Merz car when Kellum entered it, and observed that act, and the subsequent running of the automobile for thirty miles preceding the accident. Mr. Newby testified that he had no conversation with Kellum about taking Lime's place in the Merz car. We are of the opinion that from the conduct of Newby and Kellum the jury was warranted in finding that Kellum's service

while riding in the Merz car, was, under the circum- stances, a continuance of the same character of ser- vice, as contemplated by the parties, as that ren- dered when Kellum was riding in the Aitken car.

Complaint is made of the giving and refusing of various instructions. What we have already said dis- poses of the most serious objections urged. In other respects we find no reversible error committed in relation to any instruction given or refused. Some minor questions are presented, which are not dis- cussed here, but a consideration of all the questions presented by appellants impels the conclusion that the record discloses no reversible error. Judgment affirmed.

NOTE.—Reported in 109 N. E. 196. As to contributory negligence as question for the jury, see 8 Am. St. 849. On alleging in single count two or more acts of negligence capable of contributing to in- jury, see 27 L. R. A. (N. S.) 792; Ann. Cas. 1913 C 101. As to the burden of proof as to contributory negligence, see 10 Ann. Cas. 4. See, also, under (1) 29 Cyc 579; (2) 29 Cyc 587; (3) 29 Cyc 565, 587; (4) 38 Cyc 1924, 1928; (5) 38 Cyc 1925; (6) 26 Cyc 1513; (7) 26 Cyc 1455; (8) 26 Cyc 1214; (9) 26 Cyc 1442.