EASTMAN KODAK CO. v. NATIONAL PARK BANK et al.

(District Court, S. D. New York. March 13, 1916.)

1. ASSIGNMENTS ☞49—CHECK AS "ASSIGNMENT"—LETTERS OF ADVICE.

That simultaneously with the drawing of a check on a bank by a foreign depositor the depositor, pursuant to the usual practice between the parties, sent the common letter of advice which frequently goes with a foreign check, to the bank, directing it to protect the check, did not create an "assignment" in view of Negotiable Instruments Law N. Y. (Consol. Laws, c. 38) § 325, providing that a check does not operate as an assignment and that the bank is not liable to the holder unless and until it accepts or certifies the check.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 85–98; Dec. Dig. ☞49.

For other definitions, see Words and Phrases, First and Second Series, Assignment.]

2. BILLS AND NOTES ☞429—CHECKS—PAYMENT THROUGH CLEARING HOUSE.

A check drawn on one bank in favor of another was presented for payment at the clearing house and marked as a credit to the payee bank on the sheet of the drawee, but before the clearing house closed it was returned to the payee with the statement that the drawee had no instructions to pay it. Under the rules of the clearing house, the whole day must expire before the credit entries are to be taken as receiving the assent of the debtor members, and it makes no difference for what reason they decline to admit the item. *Held*, that there was no payment of the check, and it did not alter the situation that the payee, upon return of the check, drew its check and in form made a repayment to the drawee instead of changing the clearing house entries.

[Ed. Note.—For other cases, see **Bills and Notes**, Cent. Dig. §§ 1245-1250, 1262, 1263; Dec. Dig. ☞429.]

3. BANKS AND BANKING ☞140(1)—CHECKS—REFUSAL TO PAY—LIABILITY.

That a bank's refusal to pay a check was based upon a mistake of fact, in that it incorrectly believed it had received no letter of advice from the depositor directing payment of the check, did not make the bank liable to the holder of the check in view of Negotiable Instruments Law N. Y. § 325, providing that a check does not operate as an assignment and that the bank is not liable to the holder unless it accepts or certifies the check.

[Ed. Note.—For other cases, see **Banks and Banking**, Cent. Dig. §§ 380, 394-397; Dec. Dig. ☞140(1).]

4. BANKS AND BANKING ☞140(3)—CHECKS—ACCEPTANCE.

A check drawn on a bank by a foreign depositor in favor of another bank was presented for payment at the clearing house and credited to the payee, but on the same day it was returned to the payee with the statement: "No instructions to pay. Present again." *Held*, that there was no acceptance, and moreover the clearing house is a means of payment of checks and not of their acceptance, and checks do not contemplate acceptance, but payment.

[Ed. Note.—For other cases, see **Banks and Banking**, Cent. Dig. §§ 385-388; Dec. Dig. ☞140(3).]

5. BANKS AND BANKING ☞140(7)—CHECKS—EQUITIES.

Where a check or draft to the order of a bank for plaintiff's account was purchased from a drawer who made an assignment for the benefit of creditors and against whom a petition in bankruptcy was filed before payment of the check or draft, plaintiff had no greater equities than other creditors of the drawer and was not entitled to have the drawee adjudged to hold the amount of the draft in trust for it.

[Ed. Note.—For other cases, see **Banks and Banking**, Cent. Dig. § 392; Dec. Dig. ☞140(7).]

6. COURTS ☞281—JURISDICTION—LAW OR EQUITY.

A draft or check was purchased in England and sent by the purchaser to a bank for plaintiff's account. It was presented for payment at the clearing house and credited to the payee, but subsequently returned on the ground that the drawee had received no instructions to pay it; whereupon the payee bank drew its check and in form repaid the amount to the drawee. Before payment, the drawer made an assignment for the benefit of creditors, and a petition in bankruptcy was filed against him in New York. A creditor attempted to attach the account in the drawee bank, and plaintiff sued the bank to declare a trust for plaintiff and named as defendants the drawee bank, the attaching creditor, the purchaser of the draft, the drawer, his assignee, the petitioning creditors in bankruptcy, and the receiver in bankruptcy. *Held* that, there being the requisite diversity of citizenship between plaintiff and the drawee bank, the court had jurisdiction, since, if equitable jurisdiction did not exist, jurisdiction at law existed on the theory that there was a claim in personam

against the drawee for money had and received under a mistake of fact, and under the new equity rules the claim would be disposed of whether at law or in equity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–825; Dec. Dig. ☞281.]

In Equity. Suit by the Eastman Kodak Company against the National Park Bank and others. On motion to dismiss. Bill dismissed on the merits.

This is a motion to dismiss a bill in equity, of which the following is an analysis: The plaintiff is the purchaser from the defendant Kodak, Limited, of a draft or check drawn upon the National Park Bank and in favor of the Bankers'. Trust Company, to the account of the plaintiff. The drawer was one Alfred Edward Berthoud, a subject of Great Britain. The defendant Kodak, Limited, paid Berthoud for the draft, received it, and sent it by mail to the Bankers' Trust Company. This took place on January 24, 1914. On the same day Berthoud sent a letter to the National Park Bank as follows:

"Dear Sirs: Please protect our checks for:

$    75.00 % American Electric Ry. Association
30,000.00 % Bankers Trust Co. % Eastman Kodak Co.

$30,075.00 by the debit of our account."

On February 2, 1914, the defendant Bankers' Trust Company received the check in the mail and the National Park Bank received the letter. On the morning of February 3, 1914, after receipt of the letter by the defendant, the check was presented for payment at the clearing house and was marked as a credit to the Bankers' Trust Company on the sheet of the National Park Bank. At 2:45 o'clock on that day, before the clearing house closed, the check was returned to the Bankers' Trust Company with the statement: "No instructions to pay. Present again"—this being through a mistake on the part of the National Park Bank. The check was presented on February 4th and payment refused by the National Park Bank. At all the times in question, Berthoud had on deposit at the National Park Bank the sum of more than the face of the draft, $30,000. Berthoud has made an assignment for the benefit of creditors in England, a petition in bankruptcy has been filed against him in the Southern District of New York, and a receiver appointed. The Farmers' Loan & Trust Company has attempted in the state court to attach the account of Berthoud in the National Park Bank upon a claim of its own. The parties defendant, besides National Park Bank, are the Farmers' Loan & Trust Company, who attached the credit, Kodak, Limited, the original purchaser of the draft, Berthoud, his assignee in England, the three petitioning creditors in bankruptcy, and the receiver in bankruptcy. The relief demanded is that the Park National Bank be adjudged to hold the amount of the draft in trust for the plaintiff and that the interests of the other defendants be declared at an end.

Clarence P. Moser, of Rochester, N. Y., and Joseph M. Hartfield, of New York City, for plaintiff.

Louis F. Doyle, of New York City, for National Park Bank.

James F. Horan, Edward H. Blanc, and George S. Mittendorf, all of New York City, for Farmers' Loan & Trust Co.

LEARNED HAND, District Judge (after stating the facts as above). [1] It is not necessary to cite authorities for the rule that the execution and delivery of a check effects no assignment of the fund, because that is now provided by section 325 of the Negotiable Instruments Law. The plaintiff claims to have established a collateral agreement taking this case out of that rule. Courts have no doubt often

gone to some lengths to interpret the surrounding circumstances as indicating an agreement to assign, but in no case like this, when the check was neither upon a specific fund nor for the whole amount of the fund. The only facts to change the rule are that simultaneously with the check went an advice to the drawee as follows: "Please protect our checks for $30,000°/₀ Bankers Trust Co. ª/ₑ Eastman Kodak Co. by the debit of our account." This is no more than the common letter of advice which frequently goes along with a foreign check; it does not create an assignment. Ætna National Bank v. Fourth National Bank, 46 N. Y. 82, 7 Am. Rep. 314; Hopkinson v. Forster, L. R. 19 Eq. 74. This is indeed alleged to have been the usual practice between the parties, and as such it cannot well have been meant to create an assignment. If so, the bank would at its peril have been obliged to keep a list of the advices in the order of their priority. To have paid out a later check, when advice had been received of the issuance of an earlier check, would have exposed the bank to a suit unless the account was good for all. No bank would consider a customer's business which was to be done in such terms. It pays checks as they are presented, and receives advices in the case of foreign depositors only for the purpose of identifying the items as they arrive. They serve as a safeguard to the validity of the paper when the business is done at long range.

None of the cases cited by the plaintiff have any bearing upon the facts here at bar. Coates v. First Nat. Bank of Emporia, 91 N. Y. 20, was not a case of a check given to the payee and presented by him. The Emporia bank asked the insolvent to remit funds to New York bankers on which it might draw. The insolvent advised the Emporia bank that it had done so, and in performance of its representation drew a draft upon the New York bankers and told them to credit the account of the Emporia bank. Whether the case was correctly decided or not, it was not a usual mercantile transaction consisting merely of the delivery of a check to the payee. Similarly, Fourth Street Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855, depended wholly upon the fact that it was a transaction out of the common and by special agreement to meet the embarrassments of the drawer. Such cases cannot control a case like this. National Union Bank v. Earle (C. C.) 93 Fed. 330, is indeed more nearly in point, but one of three things about it must be true: Either it violates the general rule, or it depends upon the fact that the drawer had been collecting funds for the payee, or that there was an actual payment of the check. I think that it depends upon the last point and shall consider it later. Throop Grain Gleaner Co. v. Smith, 110 N. Y. 83, 17 N. E. 671, was not a case of a check on a bank at all, and the drawer actually advised the drawee that he had "assigned." Fortier v. Delgado, 122 Fed. 604, 59 C. C. A. 180, was a case of a check upon an especial fund set aside for laborer's pay, and held, somewhat doubtfully in my judgment, to be on that account an assignment. Re Hollins, 215 Fed. 41, 131 C. C. A. 349, L. R. A. 1915B, 438, and Muller v. Kling, 209 N. Y. 239, 103 N. E. 138, are so remote as to require no notice. In all the cases cited some facts existed other than a mere advice to the drawee that the checks had been drawn and

a request that they should be honored, which is all that there was in the case at bar.

I think it an extremely pernicious thing to throw doubt upon the scope of doctrines governing negotiable paper which, though a mere skeleton of expression, is among the most useful inventions of mankind. To seek too readily for exceptions from the well-settled rules upon this branch of the law in pursuit of a supposed equity, which incidentally does not exist here, is an evidence of insufficient understanding of the economies of finance and their immense value to industry.

[2] The only remaining question is whether the check was paid when it was presented. If I were to take the bill as it stood, I should have to decide that question for the plaintiff, because the allegation is categorical; but the parties agree that it shall be interpreted in the light of the rules and constitution of the clearing house. Payment is a matter of intent, and it seems to me quite clear that the mere entry of the items upon a sheet in the clearing house is not intended as a payment. It is what Mr. Justice Miller calls it in Columbia-Knickerbocker Trust Co. v. Miller, 215 N. Y. 191, 195, 109 N. E. 179, 180, "a sort of tentative or provisional payment." "As between the immediate parties to the transaction, then, there was plainly no payment," 215 N. Y. 180, 109 N. E. 196. The rules make it clear that the whole day must expire before the credit entries are to be taken as receiving the assent of the debtor members, and it makes no difference for what reason they decline to admit the item.

It is true that the Bankers' Trust Company drew its check on February 4th to make good the deficit, and in form that was a repayment, but it was not such in its whole setting; it was only to avoid garbling the original entries and the footings, and so confusing the bookkeeping. In just the same way a bank will always correct errors in its customer's account by a new check from the customer, rather than to correct its books and make a change in the books. The case cited, Columbia-Knickerbocker Trust Co. v. Miller, supra, required a decision that the provisional entries were not payments and proceeded upon that theory, because if the National Bank of Commerce had once collected the check it held the amount for the Columbia-Knickerbocker Trust Company, and they were responsible to Miller, the customer, if they did not collect. In that case, as well, the National City Bank drew a check to correct the provisional credit to itself, as it was obliged to do by the clearing house rules. In Hentz v. National City Bank, 159 App. Div. 743, 144 N. Y. Supp. 979, the Appellate Division for the First Department made a similar ruling, and it must, of course, be taken as a fixed rule of commercial law in the state of New York. Aside from the fact that it appears to me a correct decision, I should feel very doubtful of the propriety in such a matter of trying to start an opposite rule upon such a question, so that the decision might be one way when the suit was between citizens and another when this court had jurisdiction. Such a condition is always to be avoided unless it is absolutely necessary, although this court is, of course, not authoritatively bound by the rulings of state courts on matters of commercial law. I believe that Judge Dallas'

decision in National Union Bank v. Earle, supra, is certainly to the contrary, but it was some time ago, and appears to have proceeded without any consideration of the actual machinery of the clearing house; payment seems to have been assumed without discussion. If it must be taken as an authority consciously contrary to the rule in Columbia-Knickerbocker Trust Co. v. Miller, supra, and Hentz v. National City Bank, supra, I can only say with the greatest respect that, being forced to choose between authorities none of which is authoritative, I must select that one which appears to me more consonant with the real purpose of the parties to the transaction.

[3, 4] Some point is made that the first refusal to pay the check was based upon a mistake of fact as was the case, because notice had in fact been received and the statement to the contrary was incorrect. The mistake was quite irrelevant. Had the National Park Bank refused to honor the check willfully and for no reason whatever, no liability would have attached to it; the payee can sue only the drawer, and the drawer must look to the drawee. Negotiable Instruments Law, § 325. There is perhaps also a faint suggestion that the transaction may be regarded as an acceptance, but this, too, is without foundation. Waiving the point that an acceptance must be in writing, it is enough to say that there was no intention to accept. The clearing house is a means of payment of checks not of their acceptance; indeed, checks are drafts which do not contemplate acceptance but payment. If the transactions on February 3, 1914, constituted a payment, then the plaintiff has a good cause of action in personam against the National Park Bank, because the "repayment" of the Bankers' Trust Company was without doubt by mistake; but, if they did not create payment, then the National Park Bank was not liable to the plaintiff upon any theory whatever. Payment therefore is the only possible ground of recovery.

[5] The plaintiff makes much of its supposed equities, but I confess I can find no reason to prefer it against other creditors, whose money was no doubt as dear to them as the plaintiff's was to it. They bought a check, nothing more, nothing less. They knew what a check was, and that in buying it they got nothing whatever but the credit of the drawer until they got it paid. Just what the injustice is in keeping them in the same class with other creditors who equally took the chances of the drawer's credit is not apparent to me.

[6] The point of jurisdiction it is not necessary to consider, except to say that the bill attempts to present some cause of suit or cause of action against at least the drawee bank. It makes no difference whether that claim is at law or in equity under the new equity rules. I ought to call it by the proper name and dispose of it, if it were good from any point of view. If equitable jurisdiction does not exist on the theory of adjusting the rights in a res in court, jurisdiction at law does exist on the theory of a claim in personam against the drawee for money had and received under a mistake of fact, because the plaintiff and the National Park Bank have the requisite diversity of citizenship.

Therefore a decree may be entered on the merits, and that decree will be a dismissal of the complaint, with costs.