## In re HOLLINS et al.

(Circuit Court of Appeals, Second Circuit. June 20, 1914.)

No. 256.

1. ASSIGNMENTS (§ 49\*)—EQUITABLE ASSIGNMENTS—AGREEMENT TO PAY BILL OR DRAFT FROM SPECIFIC FUND.

It is the general rule that a bill of exchange or draft does not operate as an equitable assignment, where it has not been drawn on any particular fund, and this rule is not changed by the fact that funds may have been placed in the drawee's hands as a means of payment; but if in the course of the transaction connected with the delivery of the bill or draft it is agreed, either expressly or by necessary implication, that the bill or draft shall be a charge on and satisfied out of a specific fund, a court of equity will give effect to the agreement as against the drawer, mere volunteers, and persons charged with notice.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 85–98; Dec. Dig. § 49.\*]

2. BANKRUPTCY (§ 188*)—EQUITABLE LIENS—SECURITIES DEPOSITED TO PROTECT DRAFTS.

Bankrupt firm deposited securities in New York for the account of a London bank to protect drafts, which it was agreed might be drawn on such bank. The drafts were drawn and sold to a New York bank, which was informed that they were drawn pursuant to an agreement with the drawee. The purchaser knew of the custom of the drawer, which was also a general custom, to draw foreign drafts against collateral deposited as security and bought in reliance thereon, and not on the personal credit of the drawer. Bankruptcy having intervened, the London bank refused acceptance of the drafts. *Held*, that the holder of the drafts succeeded to the lien on the securities to which the drawee would have been entitled on their payment as against the receiver in bankruptcy, who took no greater rights than the bankrupt had.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. § 188.*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of Harry B. Hollins and others, individually and as members of the firm of H. B. Hollins & Co., bankrupts. Petition by A. Leo Everett, receiver, to revise an order establishing a lien on certain securities in favor of John L. Hogeboom. Affirmed. For opinion below, see 210 Fed. 965. See, also, 212 Fed. 317.

Lexow, Mackellar & Wells, of New York City (George M. Mackellar and Martin A. Schenck, both of New York City, of counsel), for receiver.

Alexander & Green, of New York City (Charles C. Deming and W. W. Lancaster, both of New York City, of counsel), for petitioner Hogeboom.

Before COXE and ROGERS, Circuit Judges, and MAYER, District Judge.

ROGERS, Circuit Judge. A petition was filed against a receiver in bankruptcy to establish an equitable lien in certain securities. The issues involved were referred to a special master, who reported in favor of the petitioner. This report was confirmed by the District Judge, who held that the petitioner, John L. Hogeboom, was entitled to a lien on certain securities in the hands of the Equitable Trust Company of New York City, which securities had been deposited with the trust company by H. B. Hollins & Co., now bankrupts, under an agreement with A. Ruffer & Sons, of London, England, that such securities should be deposited with the trust company for the account of A. Ruffer & Sons, that H. B. Hollins & Co. might draw drafts or bills of exchange upon the said A. Ruffer & Sons against the said securities. It appears that H. B. Hollins & Co., having deposited the securities as agreed upon, drew certain drafts on A. Ruffer & Sons, which drafts aggregated $75,000. These drafts H. B. Hollins & Co. offered for sale to the International Banking Corporation, a corporation organized under the laws of Connecticut. At the time the drafts were thus offered, H. B. Hollins & Co. represented to the International Banking Corpo-

ration that they had been drawn pursuant to agreement existing between themselves and A. Ruffer & Sons. Thereupon the International Banking Corporation purchased the drafts. At the time of the purchase the buyer knew that it was a custom of H. B. Hollins & Co. in their dealings with foreign bankers to draw drafts against collateral deposited for security, and, in purchasing, relied on this custom. When the drafts were presented acceptance was refused, because of the filing, in the meantime, of a petition in bankruptcy against H. B. Hollins & Co. as a firm, and against the persons who composed it as individuals. Thereafter the International Banking Corporation assigned the drafts to Hogeboom, the petitioner.

The receiver in bankruptcy claims that the securities which the bankrupts deposited with the trust company are a part of the estate of the bankrupts for the benefit of their personal creditors. The assignee claims that as his assignor did not purchase the drafts upon the general credit of the drawers, but in reliance upon the securities deposited in the Equitable Trust Company he has a claim upon those securities superior to any claim of the general creditors. The trust company refuses to surrender the securities except with the consent of the receiver.

The deposit of the securities was made "to the account of A. Ruffer & Sons" and was prior in time to the drawing of the drafts assigned to Hogeboom. The securities were deposited with the trust company in pursuance of the agreement made by H. B. Hollins & Co. with A. Ruffer & Sons. The agreement stated that the securities were to be at the exclusive disposal of A. Ruffer & Sons, and that they were pledged as collateral security for the payment of any sum "now or hereafter due from us to you." The agreement also provided that the securities pledged should be released only on the order of A. Ruffer & Sons or against bankers' drafts approved by them. There is no evidence of any express agreement between the buyer of the drafts and the seller of them that the former should have the benefit of the securities.

[1] The general rule is that a bill of exchange or draft does not operate as an equitable assignment where it has not been drawn on any particular fund. The rule is not changed by the fact that funds may have been placed in the drawee's hands as a means of payment. Pomeroy's Equity Jurisprudence, § 1284; Bowker v. Haight & Freese Company (C. C.) 146 Fed. 257 (1906); Florence Mining Company v. Brown, 124 U. S. 385, 8 Sup. Ct. 531, 31 L. Ed. 424. It is also settled that, if in the course of the transaction connected with the delivery of the bill or draft it is understood and agreed that the bill or draft shall be a charge on and satisfied out of a specific fund, a court of equity will give effect to the agreement as against the drawer, mere volunteers, and parties charged with notice. Fourth Street Bank v. Yardley, 165 U. S. 634, 650, 17 Sup. Ct. 439, 442 (41 L. Ed. 855 [1897]). In the above case there had been a specific representation by the seller of the check which had been relied upon by the buyer. The case shows it is not necessary that there should be an express agreement. An implied agreement is sufficient. The opinion was written by the present Chief Justice of the court, who said:

"In the light of these principles, we proceed to consider the facts certified, in order to ascertain whether in the transaction connected with the giving of the check in question there was either an express agreement to assign the fund or to give a lien or charge thereon, or whether, if not express, such agreement is necessarily to be implied from the conduct of the parties, the nature of their dealings, and the attendant circumstances."

[2] In transactions of the nature of that under consideration the surrounding circumstances may be considered with the view of determining the intention of the parties. If it was the understanding of the parties that the drafts were drawn against certain collateral securities deposited to the account of A. Ruffer & Sons, and if the drafts were purchased on the faith of those securities, and not on the general credit of H. B. Hollins & Co., it is the duty of this court to give effect to the agreement.

We think the facts show that the drafts were not purchased on the general credit of H. B. Hollins & Co. The amount of the drafts, $75,000, is so large that we are not inclined to believe they would have been purchased by the International Banking Corporation had it not been understood that specific means of payment existed outside of and beyond the mere general credit of the seller. There exists a well-known and established custom in dealings between New York and foreign bankers that where bills of exchange are drawn by a New York banker upon a foreign banker, such drawings are against specific security deposited by the drawers. This custom was known to the International Banking Corporation, and was relied upon in the purchase of the drafts. And when the purchase was being negotiated, H. B. Hollins & Co. specifically stated that the drafts were drawn "pursuant to an agreement" with A. Ruffer & Sons, on whom they were drawn. This representation must have been understood as meaning that securities had been deposited according to custom, and that A. Ruffer & Sons had agreed to pay the drafts. That the drafts were drawn against these securities is admitted. If A. Ruffer & Sons had paid them according to agreement, they would have been entitled to reimbursement out of the securities as against the receiver in bankruptcy. See Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995. The fact that A. Ruffer & Sons declined to pay the drafts, thus breaking the agreement with H. B. Hollins & Co. on the faith of which the drafts were purchased by the International Banking Corporation, should not defeat the right of the latter to be made good out of the securities against which it is admitted the drafts were drawn.

We think the facts in the case are in principle not unlike those in Muller v. Kling, 209 N. Y. 240, 103 N. E. 138 (1913). It was held in that case that the circumstances attendant upon the purchase of a draft by plaintiffs from defendants' assignors disclosed that plaintiffs had parted with their money to such assignors on the supposed security of a fund to be created by the transfer by the drawers of a third party; that the rights of plaintiff to the fund arising from the payment of that debt were therefore superior to those of general creditors of such assignor. The court applied the equitable doctrine that where the just and clear rights of a party to payment of a debt from a par-

ticular fund could be secured in no other way, the fund or its proceeds would be regarded as a trust for his better security.

A trustee in bankruptcy takes the property of a bankrupt subject to equities in favor of third persons, whether arising out of the act of the bankrupt or by operation of law, provided the transactions are not invalid as to creditors. Gage Lumber Co. v. McEldowney, 207 Fed. 255, 124 C. C. A. 641 (1913); In re M. E. Dunn & Co. (D. C.) 193 Fed. 212 (1912); In re McConnell (D. C.) 197 Fed. 438 (1912); Goodnough Mercantile & Stock Co. v. Galloway (D. C.) 171 Fed. 940 (1909). And we discover nothing in the transaction between H. B. Hollins & Co. and A. Ruffer & Sons, or between H. B. Hollins & Co. and the International Banking Corporation, which is invalid as to creditors. The receiver of H. B. Hollins & Co. consequently stands in the shoes of the bankrupt firm, with no greater rights as against the plaintiffs than H. B. Hollins & Co. possessed. As between H. B. Hollins & Co. and the International Banking Corporation it would not be equitable to allow H. B. Hollins & Co. to appropriate the collateral against which the drafts were, as a matter of fact, drawn, and against which the International Banking Corporation understood they were drawn, and upon the faith of which the purchase was made.

If one without more agrees to give security upon specific property, the agreement to give the security in itself creates an equitable lien. If as an inducement to purchase drafts the buyer is given to understand that securities have been deposited to provide for the payment of the drafts offered for sale and on the faith of that understanding the drafts are purchased, as between the buyer and the seller an equitable lien is created which gives the buyer of the drafts a right to have them paid out of the securities so deposited. As this would be the right as against the seller it is the right as against the receiver of the seller. Bispham in his treatise on Equity, § 351, says:

"In modern times the doctrine of equitable liens has been liberally extended for the purpose of facilitating mercantile transactions, and in order that the intention of parties to create specific charges may be justly and effectually carried out. Any agreement sufficiently indicating an intention to make some particular property or fund therein described or identified as security for an obligation creates a lien upon the property as respects that obligation."

Order affirmed.