THE EQUITABLE TRUST COMPANY OF NEW YORK, TRUSTEE IN BANKRUPTCY OF KNAUTH, NACHOD & KUHNE, *v.* THE FIRST NATIONAL BANK OF TRINIDAD, COLORADO.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 130. Argued December 7, 1927.—Decided January 3, 1928.

1. A New York banking firm, in order to enable small banks in this country to draw upon foreign banks with which it had credit, offered, upon receipt of advice of such a draft accompanied by funds adequate to cover it and the firm's compensation, to forward advice of the draft to the drawee bank and to provide the drawee

with funds sufficient for its payment, by transfer of the firm's credit with the drawee, or otherwise, the drawing bank to act as principal, and draw in its own name and the firm being employed merely as agents of the drawer for the purpose of giving such advice and of providing such funds. In pursuance of this plan, a Colorado bank, claimant herein, drew and sold its draft on an Italian bank, notified the firm, requesting that it protect the draft on presentation, and sent it a check which the firm deposited to its general account in New York. The firm then sent to the Italian bank a list of drafts, including drafts issued by itself and by other banks as well as that of the claimant, with a request to the Italian bank to protect and honor them and charge them to the firm's account. The Italian bank so charged them, and credited them in an account "Drafts Payable." To compensate that bank, the firm's account ceased to draw interest on the amount so charged. International banking practice permitted the firm to cancel such advices if it saw fit, and regain its credit. It did not appear that the claimant or the holder of its draft knew of the mode of bookkeeping described. Thereafter the firm became bankrupt, the draft for that reason was dishonored, the drawer took it up, and claimed special reimbursement from the trustee in bankruptcy for the amount it paid the firm. *Held;*

(1) That the sum paid by the claimant to the bankrupt was not paid upon trust to be applied to the draft. P. 366.

(2) The claimant was not an equitable assignee, *pro tanto,* of the bankrupts' deposit with the drawee. *Id.*

2. The words "Pay from balance against this check," do not import an assignment. P. 368.

13 F. (2d) 732, reversed.

CERTIORARI, 273 U. S. 684, to a judgment of the Circuit Court of Appeals which reversed an order of the District Court, in bankruptcy, confirming a special master's report disallowing the reclamation claim of respondent.

*Mr. Godfrey Goldmark,* with whom *Mr. Ralph F. Colin* was on the brief, for petitioner.

There can be no equitable assignment of a fund to come into existence unless (a) there was an intention to create an assignment; and (b) a *res* has been irrevocably

appropriated, the creation of which is a carrying out of the intention. Whether or not certain acts amount to the setting up of a *res* is in turn dependent upon the intention with which those acts are done. *Hamer* v. *Sidway*, 124 N. Y. 538; *In re Interboro Cons. Corp'n.*, 288 Fed. 334; *Hopkinson* v. *Forster*, L. R. 19, Eq. 74.

There can be no equitable assignment unless the assignee knows of and consents to the setting up of the fund, or unless the fund is taken in satisfaction of or as security for the obligation, or if the fund or balance set up remains at the risk of the alleged assignor, or if the alleged assignor retain control over the fund or balance, or may revoke his instructions with respect thereto. Pomeroy Eq. Juris., 4th ed. § 1281; *Barnes* v. *Alexander*, 232 U. S. 117; *Spellman* v. *Bankers' Trust Co.*, 6 F. (2d) 799; *Tiernan* v. *Jackson*, 5 Pet. 579; *Williams* v. *Everett*, 14 East 581; *In re Interboro Cons. Corp.*, 288 Fed. 334; *Christmas* v. *Russell*, 14 Wall. 69; *Cushings* v. *Chapman*, 115 Fed. 237. See also *In re Stiger*, 202 Fed. 791, affd. 209 Fed. 148; and 5 C. J. 913.

The mere advice to a bank of the drawing of a draft in accordance with international banking practice does not indicate an intention equitably to assign any of the depositor's balance with the drawee. *Eastman Kodak Co.* v. *Park Nat. Bank*, 231 Fed. 320, affd., 247 Fed. 1002.

The mere direction to pay a draft and charge it to the account of the depositor does not constitute an equitable assignment, nor is there an equitable assignment even if the funds have been placed in the hands of the depositary as a means of satisfying the depositor's absolute obligation. *National City Bank* v. *Hotchkiss*, 231 U. S. 50; *Eastman Kodak Co.* v. *Park Nat. Bank*, 231 Fed. 320, affd., 247 Fed. 1002; 3 Pomeroy Eq. Juris. § 1282; *Cheney* v. *Libbey*, 134 U. S. 68; *Aetna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82.

Even an agreement to pay a debt out of a designated fund does not give an equitable lien on the fund or operate as an equitable assignment. *Williams* v. *Ingersoll*, 89 N. Y. 508; *Christmas* v. *Russell*, 14 Wall. 69.

Mere book entries dividing a bank balance into two or three accounts, as a matter of convenience or in pursuance of a well established custom, do not evidence an intention to assign a fund, and do not constitute an equitable assignment. *In re Interboro Cons. Corp.*, 288 Fed. 334; *Noyes* v. *First Nat. Bank*, 180 App. Div. 162; affd. 224 N. Y. 542; *Taussig* v. *Carnegie Trust Co.*, 156 App. Div. 519; affd., 213 N. Y. 627; *Kuehne* v. *Union Trust Co.*, 133 Mich. 602.

The obligation to provide "sufficient funds" was the same as that discussed in *Beecher* v. *Cosmopolitan Trust Co.*; 239 Mass. 48. *Noyes* v. *First Nat. Bank*, 180 App. Div. 162, affd., 224 N. Y. 542; *Erb* v. *Banco di Napoli*, 243 N. Y. 45; *In re Interborough Cons. Corp.*, 288 Fed. 334, certiorari denied, 262 U. S. 752.

The contract of the parties and the method of its execution did not establish *ab initio* a fiduciary or agency relationship between the Trinidad Bank and K. N. & K. *Beecher* v. *Cosmopolitan Trust Co.*, 248 Mass. 48; *St. Regis Paper Co.* v. *Hubbs etc. Paper Co.* 235 N. Y. 30; *Sloan Shipyards Corp.* v. *Emergency Fleet Corp.*, 258 U. S. 549; *Casement* v. *Brown*, 148 U. S. 615; *Employers' etc. Corp.* v. *Emergency Fleet Corp.*, 290 Fed. 182; *Bendix* v. *Staver Co.*, 174 Ill. App. 589; *Petition of Williams*, 297 Fed. 696; 2 C. J. 423; 21 Columbia Law Review 521; *Moore* v. *Potter*, 155 N. Y. 481; *Legniti* v. *Mechanics & Metals Nat. Bank*, 230 N. Y. 415; *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Strohmeyer etc. Co.* v. *Guaranty Trust Co.*, 172 App. Div. (N. Y.) 16; *Safian* v. *Irving Nat. Bank*, 202 App. Div. 459, affd., 236 N. Y. 513; *Sam-*

*uels* v. *E. F. Drew & Co.*, 296 Fed. 882; *Taussig* v. *Carnegie Trust Co.*, 156 App. Div. 519, affd., 213 N. Y. 627.

If A purchases from an American banker his draft in foreign currency upon a foreign bank and procures such draft from the American banker, he has procured what he desired in the negotiable obligation of the banker. The transaction is executed and A has become merely the owner of the banker's general obligation on the draft. *In re Bolognesi*, 254 Fed. 770; *Legniti* v. *Mechanics Bank*, 230 N. Y. 415.

If A goes to the American banker and pays him American dollars and the banker contracts to establish a credit for a definite amount of foreign currency in a foreign bank in the name either of A or A's nominee, then the contract is not that a specific sum is to be sent abroad, but rather that a specific credit is purchased, and what A gets is the banker's contract to establish that credit for that definite amount. This contract is executory but results only in A obtaining the general obligation of the banker. *Legniti* v. *Mechanics etc. Bank*, 230 N. Y. 415; *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Beecher* v. *Cosmopolitan Trust Co.*, 239 Mass. 48; *American Express Co.* v. *Cosmopolitan Trust Co.*, 239 Mass. 249; *Foreign Trade Banking Corporation* v. *Cosmopolitan Trust Co.*, 240 Mass. 413.

If A goes to a New York banker and directs the banker to transmit a certain specific sum of money to a person abroad, the banker is the agent of the person paying the money, and until the money is sent, will hold it as agent or trustee for the owner. Here the intention of the payer is that the money he gives to his agent shall be sent abroad. It is the amount which he gives which is to be transmitted. *Legniti* v. *Mechanics etc. Bank*, 230 N. Y. 415; *Musco* v. *United Surety Co.*, 132 App. Div. (N. Y.)

300; *People ex rel Zotti* v. *Flynn,* 135 App. Div. (N. Y.) 276.

*Mr. George Trosk,* with whom *Messrs. William De-Forest Manice* and *Allen R. Memhard* were on the brief, for respondent.

An equitable assignment of the moneys was effected. *Coates* v. *First Nat. Bank,* 91 N. Y. 20; *Risley* v. *Phoenix Bank,* 83 N. Y. 318; *Throop Grain Co.* v. *Smith,* 110 N. Y. 83; *Rivers* v. *Wright Co.,* 43 S. E. 499; *Muller* v. *Kling,* 209 N. Y. 239; *Fourth St. Nat. Bank* v. *Yardley,* 165 U. S. 634; *Fortier* v. *Delgado & Co.,* 122 Fed. 604; *Burns* v. *Carvalho,* 4 M. & C., 690; *Ketchum* v. *St. Louis,* 101 U. S. 306; *Hinkle Iron Co.* v. *Korn,* 229 N. Y. 179; *Jackson* v. *Tallmadge,* 216 App. Div. (N. Y.) 100.

The moneys remitted by claimant to the bankrupts were received by them in trust, as agents of the claimant, for a particular purpose. *Legniti* case, 230 N. Y. 415, 420–421; *Matter of Pacat Finance Corp.,* 295 Fed. 394.

The bankrupts received the claimant's money in trust for a particular purpose. *Giles* v. *Perkins,* 9 East 12; *Burdett* v. *Willett,* 2 Vernon 638; *In re Jarmulowsky,* 258 Fed. 231; *In re A. Bolognesi & Co.,* 254 Fed. 770; *St. Louis* v. *Johnson,* 5 Dillon, 241; *Massey* v. *Fisher,* 62 Fed. 958; *Mooreland* v. *Brown,* 86 Fed. 257; *People* v. *City Bank of Rochester,* 96 N. Y. 32; *Cutler* v. *American Exchange Nat. Bank,* 113 N. Y. 593; *People ex rel. Zotti* v. *Flynn,* 135 App. Div. (N. Y.) 276; *Peak* v. *Ellicott,* 30 Kans. 156; *Ryan* v. *Phillips,* 3 Kans. App. 704; *Star Cutter Co.* v. *Smith,* 37 Ill. App. 212; *Roca* v. *Byrne,* 145 N. Y. 182; 21 Col. Law Rev. 510; Vol. 16, No. 2, Journal, American Bankers Asso.

*Mr. Harold Nathan* filed a brief as *amicus curiae* by special leave of Court on behalf of Fidelity Trust Company of New York.

MR. JUSTICE HOLMES delivered the opinion of the Court.

Knauth, Nachod and Kuhne being in bankruptcy, the respondent, The First National Bank of Trinidad, Colorado, claimed priority in respect of certain funds collected by the trustee in bankruptcy, the petitioner, from the Banca Commerciale Italiana; the ground of the claim being that these funds were charged with a trust in the hands of the Italian bank. The respondent prevailed in the Circuit Court of Appeals. 13 F. (2d) 732. A writ of certiorari was granted by this Court. 273 U. S. 684.

The facts are as follows. The bankrupts had credit with many foreign banks and to enable small banks in this country to issue drafts upon such banks in their own name offered these terms: " Upon receipt of advice of draft, accompanied by adequate funds payable at par in New York, we shall promptly forward our advice of the same and provide the drawee with funds sufficient for the payment of the draft abroad, by a transfer of credit from our balance, or otherwise, provided the draft is drawn on a bank named in our latest list of correspondents." It was added that the drawing banks act as principals and draw in their own name, the bankrupts being employed merely " as agents of the drawers for the purpose of advising the issue of their drafts and providing the drawee banks with sufficient funds to cover their payment." The bankrupts sent out lists of their foreign correspondents and also daily rate cards fixing the rate for the various foreign currencies, including their own compensation, good only for the day of the date. In accordance with this plan the Trinidad bank drew a draft on a branch of the Banca Commerciale Italiana for 24360 lire, sent notice to the bankrupts that they had sold it " and shall thank you to protect same upon presentation," and remitted therewith a check for $1,191.20, which the bankrupts received on May 22, 1923,

and deposited to their general account. On the same day the bankrupts sent to the Italian bank and to its branch a list and description of the drafts issued by inland banks and by the bankrupts and requested it to "honor the above listed drafts charging same to our account." The list was received on or before June 4, 1923; the account of the bankrupts was debited with the total amount and to that extent ceased to draw interest, the bank getting its compensation in this way. At the same time an account termed "Drafts Payable" was credited with the same amount; this account being credited in the same way with drafts from other dealers with the bank and the bankrupts themselves. In accordance with the practice in international banking, the bankrupts when they saw fit to do so cancelled their advices and were recredited in their general account; and although in fact they did not cancel the advice of inland drafts except when requested by the inland banks, the Italian bank did not know or inquire into reasons and so far as appears the Trinidad bank, or at all events the holder of the draft, knew nothing of the mode of bookkeeping described.

The draft was presented after the petition in bankruptcy had been filed and was dishonored; the petitioner as drawer had to take it up and now claims on the two grounds that the sum paid by it was paid upon trust to be applied to the draft, and that as holder of the draft it is, by subrogation, an equitable assignee of the bankrupts' deposit with the drawee. The first of these need not detain us. *Beecher* v. *Cosmopolitan Trust Co.,* 239 Mass. 48. *Legniti* v. *The Mechanics & Metals National Bank,* 230 N. Y. 415. The identity of the fund was not maintained and no one expected it to be. See *National City Bank* v. *Hotchkiss,* 231 U. S. 50, 56, 57. The bankrupts undertook to ' forward ' advice but only to ' provide ' the drawee with funds. The second contention was that which prevailed below. Of course there is room for difference if

the parties did not express very clearly what they wanted
or meant, but we are led to a different conclusion whether
the reliance be upon the rights of the holder or upon the
original contract between the respondent and the bank-
rupts.   In the first place the ignorance of the whole affair
on the part of the holder and the general understanding
that the party dealing immediately with the bank having
the 'Bills Payable' account is master of it, as between
himself and the bank, are quite inconsistent with the
notion that an entry on that account is the appropriation
of a fund to the holder's use.   The respondent tries to
give a different turn to the evidence but the master's find-
ing and our own conclusion from the testimony leave no
doubt in our minds.   It is true that after such an entry
the interest allowed to the depositor stops but that is only
a convenient way of giving compensation to the bank.   It
is not uncommon in commercial transactions to see some
of the elements of an earlier or a half imitated transaction
appear, although the essentials of the transaction are not
there.   Whether a fund was appropriated or not depended
wholly on the dealings between the bankrupts and the
Italian bank; and both of them dealt with the account as
subject to the bankrupt's control.   The cessation of inter-
est was for the benefit of the bank because the account
was only with its general funds, and did not have any
assets especially set aside and appropriated to it—in short
was a bookkeeping device for the convenience of the bank.

Again, the terms offered by the bankrupts to their
correspondents seem to us to promise the appropriation
of a specified fund to the draft as little as they promise
to apply the money received by them to that end.   They
are to provide the drawee banks with sufficient funds for
the payment of the drafts by transfer of credit 'from our
balance or otherwise'.   They are to provide, that is, as
convenient to themselves, for payment by the drawee
banks, not to give them an earmark corpus to be

handed over. They are requested by their correspondents to protect the drafts, which again means merely to see that they are paid. *Wabash, St. Louis & Pacific Ry. Co.* v. *Ham*, 114 U. S. 587, 596. People dealing with large banks do not ordinarily seek the ambiguous security of an identified fund, they are satisfied if the bank gives them credit. We see no indications that the Trinidad bank was not perfectly content to know that it would have credit with the Banca Commerciale, and that in the usual course of things its drafts would be paid. Evidently with this conception of their duties the bankrupts asked the Italian bank " to protect to the debit of our account the drafts " in question and others, and the branch bank to " honor the above listed drafts." That such a letter of advice is not an assignment is clearly explained in *Eastman Kodak Co.* v. *National Park Bank*, 231 Fed. Rep. 320, 323; (affirmed, 247 Fed. Rep. 1002.)

We have called the instrument under which the respondent claims as assignee, a draft. But on its face it is called ' check '. The form was a general form furnished by the bankrupts and the purpose is said to have been that in continental Europe or some parts of it checks are not subject to the same stamp tax as drafts. It is said in a reputable work that the fact that the instrument purports to be drawn upon a deposit is what constitutes it a check. Daniels, Negotiable Instruments, 6th ed., §1569. The existence of this opinion sufficiently explains the words of the document before us ' Pay from balance against this check '. They no more purport to assign a fraction of a fund than does an ordinary check. They would not naturally take that shape as the respondent, the drawer of the check, had no fund in the hands of the drawee.

The decision of this case depends more upon the general import of the transaction and upon what the parties were

likely to want than upon the phrases that can be picked out from the several steps. We repeat that in our opinion what the parties meant to establish and what the respondent got was the assurance of a credit abroad to the extent of its check as in the case of a letter of credit, not an attenuated property right in an account to which no special funds were attached and the particulars of which neither the respondent nor the purchaser of the check could know.                          *Order reversed.*

### MR. JUSTICE STONE, dissenting

The agreement of the bankrupts, on the faith of which petitioner sold its draft, did more than stipulate that the draft should be paid on presentation. It provided specifically the method of payment; that the bankrupts should " promptly," on notice of the draft, " provide the drawee with funds sufficient for the payment of the draft abroad, by a transfer of credit or otherwise." It plainly contemplated the course of business, actually followed, in which a credit, to be established with the drawee, was to be set apart and specifically appropriated to the payment of the draft. The draft was by its terms made payable from " balance against this Check."

We need not discuss what the petitioner's rights would have been if no such credit had been established, for here the bankrupts had performed their contract fully and to the letter. They set apart the stipulated credit. Withdrawal of it by them would have been a violation of their contract with petitioner, for the contract contained no intimation of a right to revoke it, and if the receiver had not done what they had no right to do the draft would have been paid. Nor does it appear to me that the real question is whether the Italian bank was charged with a trust with respect to funds lodged with it by the bankrupts. It may be assumed that it was not a trustee, but

only a debtor to the bankrupts for the funds thus received, with power to discharge the debt *pro tanto* by payment of the draft when presented.

Stated with precision the question seems rather to be whether, since the bankrupts had performed their agreement by specifically designating and setting apart enough of their credit with the Italian bank to meet the draft, the credit thus set apart is to be treated in equity as security for the payment of the draft. If subject to that equitable obligation, neither the bankrupts nor the receiver could convert the credit, so set apart, into cash and turn the proceeds over to general creditors freed of that obligation.

Since *Holroyd* v. *Marshall*, 10 H. L. Cas. 191, it has been generally accepted doctrine, the recording acts permitting, that an agreement to hold property which the promisor may afterward acquire as security for the payment of a debt, operates in equity once the property is acquired, to give the stipulated security to the promisee in preference to general creditors. Such is the rule in this Court. *Sexton* v. *Kessler*, 225 U. S. 90. I had supposed it to be equally well settled that the agreement need not mention the word "security" to accomplish that result, if its plain purpose is to provide for the satisfaction of a debt or obligation out of identifiable property. Compare *Walker* v. *Brown*, 165 U. S. 654; *Ingersoll* v. *Coram*, 211 U. S. 335; *Hurley* v. *Atchison, Topeka & Santa Fè Ry.*, 213 U. S. 126; *Ketchum* v. *St. Louis*, 101 U. S. 306; *Parlin & Orendorff Implement Co.* v. *Moulden*, 228 Fed. 111; *Curtis* v. *Walpole Tire & Rubber Co.*, 218 Fed. 145. There has been no dissent from the view that an agreement to apply a designated credit or account to the payment of a check or draft drawn upon it creates security in the credit enforcible in equity as against general creditors. *Fourth Street Bank* v. *Yardley*, 165 U. S. 634; *Farley* v. *Turner*, 35 L. J. Ch. 710; *Coates* v. *First National Bank*, 91 N. Y.

20; *Muller* v. *Kling*, 209 N. Y. 239; *In re Hollins*, 215 Fed. 41. Equity, in making such agreements effective, does no more than it habitually does in compelling the performance of an agreement to give a mortgage to secure advances made on the faith of the agreement.

Both parties to this transaction knew that American drafts drawn on European banks would be worthless unless definite arrangement for their payment by the drawee was made in advance of their presentation, and that where, as here, a particular credit was set apart for that purpose the utility of such drafts would be seriously impaired if the credit, once established, could be cancelled at will. No intelligent banker would sell such drafts if the establishment of such a credit were not contemplated. A bank here, drawing and selling such drafts against a credit to be established abroad by others, pledges its own credit to the payee and is secured against loss and the dishonor of its drafts only in so far as it may insure the creation of the appropriate credit and retain the benefit of it once it is created. The stipulation that the bankrupts should promptly set apart a credit for that purpose upon receipt of advice of the draft and advise the drawee of it was a material inducement to petitioner to pledge its own credit by the sale of its draft. Once performed it is valuable security to both payee and drawer, if it is permitted to have the legal sanctions which ordinarily attach to agreements of this character.

The evidence in this case appears to me, as it did to the court below, to fall far short of establishing a practice or custom, or any rule of Italian law, permitting the depositor, while the drafts are outstanding, to cancel or control for his own purposes the credit set apart for their payment. Our own rule is that a bank of deposit may not, with impunity, ignore the known equitable rights of others to the credit established by its depositor, *National Bank* v. *Insurance Co.*, 104 U. S. 54, and it would seem

that that rule should be applied here in determining the rights of the parties in the absence of proof of any other. But in any case, such control, if retained by the bankrupts as between themselves and the Italian bank, could not be rightfully exercised in violation of their contract with petitioner.

The case would therefore seem to be a proper one for the application of the rule announced by this Court in *Fourth Street Bank* v. *Yardley, supra,* that a court of equity will lend its aid to carry into effect an agreement that an obligation shall be satisfied out of a specified credit. Applied here that rule would make effective the intention of the parties and give stability to a large and important class of banking transactions. The judgment should be affirmed.

MR. JUSTICE MCREYNOLDS joins in this dissent.