EARLY & DANIEL CO. v. PEARSON.
PEARSON v. SUMMEY & TOLSON.
FARMERS' NAT. BANK OF MONTICELLO et al. v. PEARSON.

Circuit Court of Appeals, Fifth Circuit.
December 19, 1929.

Nos. 5663, 5659, and 5737.

In No. 5663:

Pope F. Brock, of Macon, Ga. (Brock, Sparks & Russell, of Macon, Ga., on the brief), for appellant.

Scott Russell, of Macon, Ga. (Jones, Jones, Johnston & Russell, of Macon, Ga., on the brief), for appellee.

In No. 5659:

Scott Russell and George S. Jones, both of Macon, Ga., and George P. Barse, of Washington, D. C. (Jones, Jones, Johnston & Russell, of Macon, Ga., on the brief), for appellant.

Robert T. Jones Jr., of Atlanta, Ga. (Jones, Evins, Powers & Jones, of Atlanta, Ga., on the brief), for appellee.

In No. 5737:

Harry S. Strozier and Orville A. Park, both of Macon, Ga., R. L. Williams Jr., of Forsyth, Ga., and L. A. Wilson, John W. Bennett, and L. E. Pedrick, all of Waycross, Ga., for appellants.

Scott Russell, of Macon, Ga. (Jones, Jones, Johnston & Russell, of Macon, Ga., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. These three suits arose out of the failure of the Fourth

National Bank of Macon, Ga., and may be disposed of in a single opinion. The bank, herein sometimes called the Macon Bank, failed and a receiver was appointed on November 26, 1928. The first two suits were brought against the receiver only, while in the third the appellants, as well as the receiver, were made parties defendant to a bill of interpleader.

In No. 5663 the appellant's bill averred: That on November 19, 1928, the company made drafts on the Birdsey Flour Mills, of Macon, payable to the bank, with bills of lading attached, covering shipments of grain. That on the face of each draft was printed: "This draft is a cash item and is not to be treated as a deposit. Funds obtained through its collection are to be accounted for to drawer, and are not to be commingled with the other funds of collecting bank." That on November 23 the bank accepted check of the Birdsey Flour Mills on itself and delivered the bills of lading. That the Birdsey Flour Mills had sufficient funds to its credit in the bank to pay the check. That the bank issued and transmitted to appellant a cashier's check on the Guaranty Trust Company of New York for the aggregate amount of the drafts less exchange. That appellant, upon receipt of the bank's check sent it through the usual banking channels, but before it could be presented to the Guaranty Trust Company the Macon bank failed, "and the Guaranty Trust Company declined to honor said check." The trial court sustained the receiver's motion to dismiss the bill.

In No. 5659 these were the facts: On November 23, 1928, appellee drew a draft for $4,184.05 on the Bibb Manufacturing Company, of Macon, and sent it to the Macon bank for collection and remittance to a bank in Philadelphia for the drawer's credit. On the 24th the drawee gave in payment of the draft its check on the Citizens' & Southern Bank. On the 26th the Macon bank deposited this check, with others drawn on the Citizens' & Southern Bank, in the Macon clearing house, and would have received credit for it, except for the fact that it failed on that day. In the final settlement of account between the two banks on that day's clearance, there was a balance of about $29,400 in favor of the Macon bank, which the Citizens' & Southern Bank later paid to the receiver. Because of its failure, the Macon bank did not make remittance to the Philadelphia bank for appellee's account in compliance with its instructions. Appellee recovered judgment against the receiver for the amount of its draft, less exchange.

In No. 5737 the appellants are 13 banks which were depositors in the Macon bank. In order to prevent the transfer of their deposits to Atlanta, so as to comply with a ruling of the Federal Reserve Bank of Atlanta as to clearance at par, the Macon bank agreed with each of the appellants to make arrangements with the Federal Reserve to credit all checks of appellants drawn on it to the reserve account of the drawer, and to charge them to the reserve account of the Macon bank immediately upon receipt of such checks by the Federal Reserve, provided that payment should not be considered final on bad checks. To carry out its obligations, the Macon bank agreed to maintain on deposit with the Federal Reserve, over and above its lawful reserve, sufficient funds to cover the checks of appellants, and the Federal Reserve agreed to the plan of immediate credit and debit. These agreements were made for the purpose of providing par clearance and not for the purpose of security, but without them appellants would not have continued to carry balances in the Macon bank. They were in full force and effect when on November 24, 1928, appellants drew checks on the Macon bank payable to the Federal Reserve. These checks were drawn in the ordinary course of business, some of them in settlement of cash letters received from the Federal Reserve, and others to the credit of the drawers, and they amounted in the aggregate to about $91,000. They were received by the Federal Reserve on the morning of November 26 before it opened for business. At the opening of the Federal Reserve for business on November 26, the deposits with it to the credit of the Macon bank were only about $1,000, but the Macon bank, at the time it closed its doors, which was at 10:15 a. m. on that day, had to its credit in the Federal Reserve funds sufficient to pay the checks of appellants, and at the close of that day's business had a balance of $744,000. Demands were made upon the Federal Reserve for the payment of the amount represented by the checks by appellants, and also by appellee as receiver of the Macon bank. The Federal Reserve refused to pay to either, but brought a bill of interpleader, and paid into court that amount, less dividends paid out or in the hands of the receiver. The final decree ordered that the amount in the registry of the court be paid to the receiver.

A question common to the three cases, and one which in our opinion is decisive of each, is whether the evidence discloses a contract under which there was created an

equitable assignment of, or lien upon, funds of the Macon bank in favor of the drawers of the drafts or checks. The doctrine of equitable assignment or liens rests upon the maxim that equity regards as done that which ought to be done, and under it effect will be given to the intention of parties to a contract to make some particular property or fund security for a debt or other obligation. But to make that doctrine applicable it is necessary that the property or fund be identified or rendered capable of identification. It is not essential, however, that such property or fund be in existence at the time the contract was made; it is sufficient that it be in existence during the time within which the assignment may operate. 3 Pomeroy's Eq. Jur. (4th Ed.) §§ 1235, 1236, 1237. The right of a cestui que trust to property which has become mingled with property of the trustee continues to exist so long as it is possible to identify the property of the cestui que trust, either in its original or substituted form, but ceases to exist and the trust is destroyed when the trust property has become so intermingled with the general property of the trustee that it can no longer be traced and identified, and in the case of an insolvent trustee the cestui que trust occupies no better position than that of a general creditor. 26 R. C. L. 1354.

In making specific application of the doctrine of equitable assignment to bank funds, the Supreme Court, in Fourth Street Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 440, 41 L. Ed. 855, said:

"It is also settled that a check drawn in the ordinary form does not, as between the maker and payee, constitute an equitable assignment pro tanto of an indebtedness owing by the bank upon which the check has been drawn, and that the mere giving and receipt of the check does not entitle the holder to priority over general creditors in a fund received from such bank by an assignee under a general assignment made by the debtor for the benefit of his creditors. Florence Min. Co. v. Brown, 124 U. S. 385, 8 S. Ct. 531 [31 L. Ed. 424]; Bank v. Schuler, 120 U. S. 511, 7 S. Ct. 644 [30 L. Ed. 704]. That the owner of a chose in action or of property in the custody of another may assign a part of such rights, and that an assignment of this nature, if made, will be enforced in equity, is also settled doctrine of this court [citing cases]. While an equitable assignment or lien will not arise against a deposit account solely by reason of a check drawn against the same, yet the authorities establish that if, in the transaction connected

with the delivery of the check, it was the understanding and agreement of the parties that an advance about to be made should be a charge on and be satisfied out of a specified fund, a court of equity will lend its aid to carry such agreement into effect as against the drawer of the check, mere volunteers, and parties charged with notice." And it was also held that an equitable assignment applies, not only to cash on deposit, but also to money or drafts in the course of transmission or collection.

The just cited case has not been modified, as is contended by the receiver, by Equitable Trust Co. v. First National Bank of Trinidad, 275 U. S. 359, 48 S. Ct. 167, 72 L. Ed. 313, which dealt with bank credits as distinguished from bank funds on deposit; nor by any later Supreme Court decision. It therefore becomes unnecessary to review or to consider the many decisions cited in argument from District Courts and Circuit Courts of Appeals.

In No. 5663 the bill failed to aver that the Macon bank had on deposit with the Guaranty Trust Company in New York funds which it could have assigned by its cashier's check payable to the appellant. But, assuming that there were such funds out of which the cashier's check could have been paid, yet it is not made to appear that they could be traced or identified, or came into the hands of the receiver. Although it be conceded that the Macon bank violated its instructions, nevertheless it remains true that the proceeds of the appellant's draft were mingled with and became a part of the general mass of unidentified bank funds, with the result that the appellant's claim was no better than that of a general creditor.

In No. 5659 the proceeds of the appellee's draft are easily traceable into the balance which the Citizens' & Southern Bank, after the Macon bank's failure, paid to the receiver. It therefore appears that the receiver came into possession of an identified fund which belonged not to the failed bank but to the appellee. We therefore think that the judgment in this case against the receiver was clearly right.

In No. 5737 the Macon bank at the time of its failure had on deposit with the Federal Reserve sufficient funds to pay the checks of the appellants. Under its agreements with the appellants and its arrangement with the Federal Reserve, those funds were required to be set apart—that is to say, they were in equity assigned—to be used, in so far as was necessary, in the payment of

checks of the appellants. As soon as those funds became available, such part of them as was necessary to pay the check of appellants already in the Federal Reserve Bank passed out of the control of the Macon bank, and was required by express agreement to be credited immediately to the appellants. The right of the appellants to immediate credit was provided for, even though it should turn out that some or even all of the checks were drawn against insufficient funds, though in this case the provision for return of bad checks was not applicable, since all the checks were good. The primary purpose of the contracts was to provide for par clearance and immediate transfer of funds. Security, although not the primary purpose of the contract, was in fact required by the provision which obligated the Macon bank to provide a special fund for the payment of checks of the appellants. We conclude that in this case there was an equitable assignment to the appellants of the funds of the Macon bank in the Federal Reserve Bank, at the time of the former bank's failure.

The judgment in No. 5663 is affirmed.

The judgment in No. 5659 is affirmed.

The judgment in No. 5737 is reversed, and that cause is remanded for further proceedings, not inconsistent with this opinion.