## GREAT ATLANTIC & PACIFIC TEA CO. v. CITIZENS' NAT. BANK et al.
### No. 5092.

Circuit Court of Appeals, Third Circuit.
Aug. 28, 1933.

John A. Metz and William C. McClure, both of Pittsburgh, Pa., for appellant.

Joseph W. Ray, Jr., Henry Eastman Hackney, and Shelby, Hackney & Ray, all of Uniontown, Pa., for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is a bill in equity to recover as trust funds certain deposits of money and checks in an insolvent national banking institution. The District Court dismissed the complaint on the grounds that neither an express trust resulted from a deposit agreement between the Atlantic & Pacific Company and the Citizens' National Bank, nor a constructive trust from the acceptance by the bank of deposits when insolvent. The Atlantic & Pacific Company appealed.

It appears that the Atlantic & Pacific Company was dissatisfied with its account in the Citizens' National Bank for receiving the deposits of its several stores, and on May 2, 1931, it and the bank entered into a new agreement, wherein it was provided as follows:

"Enclosed you will find our check for Two Thousand Dollars ($2,000.00), which is to be placed on deposit as an open, dormant balance. Verification of this balance will be requested at the close of each of our fiscal quarters. This balance will not be disturbed without written notice from this office, and, unless such notice is received, no withdrawals by check or draft should be honored.

"Deposits will be made daily by our representatives who will leave with you, two copies of the form showing the amount deposited. One of these forms should be verified by your Teller, or proper officer, and attached to your draft, which will be mailed the same day to the First National Bank at Pittsburgh. The other copy will be retained for your records. A tissue copy will remain in the Manager's book which you are requested to verify also.

"Each manager should make a deposit on each business day, and we shall appreciate a wire notification of the failure to do so. Such notice should be sent, charges collect, to us at Dallas Ave. & Lynn Way, Pittsburgh, Pa."

It was customary for the managers of the company's stores to accompany their daily deposits in the bank with a ticket in the following form:

"Citizens' National Bank
(Name of Bank)
at
Andergrift, Pa.

accepts the amount listed below for immediate transfer to the First National Bank at Pittsburgh, Pa., for the account of The Great Atlantic & Pacific Tea Company in accordance with agreement in effect.

Currency .................$254.00
Silver ....................... 36.00
Checks—List below
6.00
23.44
1.15
12.25

Total ......................... 332.84"

884

In accordance with the terms of the agreement, and without the objection of the Atlantic & Pacific Company, the bank ordinarily remitted to the Pittsburgh bank the amount of the daily deposits. The remittance was in the form of the bank's draft drawn on one of its correspondents and payable to the Pittsburgh bank for deposit to the credit of the Atlantic & Pacific Company.

After the close of the bank's business hours on Saturday, October 3, 1931, the Atlantic & Pacific Company made several deposits which were preserved intact until the next business day, October 5, 1931, when they were handled in the day's transactions. On that day the company made other deposits. The bank mailed two drafts for the amount of the deposits to the Pittsburgh bank, but the Citizens' National Bank suspended business at the closing hour of the same day, and the examiner, immediately put in charge of the bank, stopped payment before the drafts were presented for payment. The receiver of the bank refused to return the amount of the deposits to the Atlantic & Pacific Company.

The parties agree that, in determining the question whether or not a debt, or a trust, was created by the terms of the deposit agreement, the intention of the parties controls, and it must be determined by their acts in the light of the surrounding circumstances.

Whatever we may say about the question will be merely cumulative and in approval of the opinion of the learned District Judge. The agreement of the parties is, of course, for the transmission of the company's money from its stores to one of its central depositories. The agreement is not ambiguous. It contemplates daily deposits of the company's funds in the bank and the transmission of the accumulated deposits of the day at the close of business to a distant bank. The method of transmitting the funds is by the bank's draft. Whenever the company made a deposit in the bank, the funds were mingled with the common mass of the bank's money, to be used as the bank would choose. There was no stipulation nor expectation that the deposits were to be set apart as a trust fund and held as such for the depositor; in other words, the company purchased the credit of the bank. There is no question but that is what the agreement means, for it says so in so many words, and the necessary conclusion is that the obligation of the bank here is purely contractual. In re A. Bolognesi & Company, 254 F. 770 (C. C. A. 2); Equitable Trust Company of N. Y., etc., v. First National Bank, etc., 275 U. S. 359, 48 S. Ct. 167, 72 L. Ed.

313; Stone, Some Legal Problems Involved in the Transmission of Funds, 21 Col. L. R. 507, 514.

At the time the deposits in question were made, the bank was insolvent, and its officers and directors were fully informed of its condition. But the situation was not hopeless. There were negotiations pending for merging the bank with solvent institutions and for obtaining additional cash funds, either of which, the officers honestly believed, would relieve the bank. The officers were informed only a few minutes before the usual closing hour of business on October 5, 1931, that the efforts to save the bank had failed, and the directors immediately ordered it to suspend business.

The Atlantic & Pacific Company contends that the receipt of the deposits, when the officers and directors of the bank knew it was insolvent, raises a constructive trust. But here there was an honest hope of avoiding what actually happened, and the facts do not fall within the rule that, when a bank has become hopelessly insolvent and its officers know its condition, it is a fraud to receive deposits from an innocent person, and such a person can reclaim the deposits or their proceeds. St. Louis & San Francisco Railway Company v. Johnston, 133 U. S. 566, 576, 10 S. Ct. 390, 33 L. Ed. 683; Quin v. Earle (C. C.) 95 F. 728.

Consequently the decree of the District Court is affirmed.