**WALLACE, County Treasurer, et al. v. ELLIOTT et al.**

**KRUPNICK v. PEOPLES STATE BANK OF SOUTH CAROLINA et al.**

No. 4073.

Circuit Court of Appeals, Fourth Circuit.
Jan. 5, 1937.

Shepard K. Nash and L. E. Purdy, both of Sumter, S. C., for appellants.

William M. Shand and E. W. Mullins, both of Columbia, S. C. (Benet, Shand & McGowan and Nelson, Mullins & Grier, all of Columbia, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This appeal involves two claims for preferences filed in a suit in equity brought on January 25, 1932, in the District Court of the United States for the Eastern District of South Carolina, by Ira Krupnick against the Peoples State Bank of South Carolina and the State Bank Examiner of the State of South Carolina. The appellees, William Elliott and Robert Gage, are the receivers of the defendant bank.

One of the claims for a preference was filed by the appellant, the City of Sumter, a municipal corporation and was for $10,525, made up of two items, one for $10,375 and the other for $150. The other claim for preference was filed by the appellant, B. C. Wallace, as County Treasurer of Sumter County, and was for $3,547.50. Due to the similarity of these claims it was agreed by counsel that they should be consolidated and heard together.

There is little, if any, dispute as to the facts. The Peoples State Bank of South Carolina was a banking institution authorized to do business under the laws of South Carolina, with one of its branches in the City of Sumter. It became insolvent on January 2, 1932. The City of Sumter maintained a deposit account in the branch of the Peoples State Bank, at Sumter, and had on December 29, 1931, a balance of $4,260.13. On that day the City Treasurer of Sumter deposited a check of Carolina Light & Power Company, which had been given to the City of Sumter for the payment of coupons and bonds on the electric lighting system of Sumter, in the amount of $10,375. On that same day the City Treasurer of Sumter presented to the Peoples Bank a check for $10,375 drawn on its account in the bank, which check bore a notation as follows: "New York Exchange, Bond Coupons, Electric Light Bonds," and listed the amount of bonds and coupons which were to be paid therewith. This check was for the purpose of providing the funds at the Chase National Bank of New York City to meet the bonds and coupons of the City of Sumter which were payable at said bank on January 1, 1932. The Peoples State Bank attempted to remit this fund to the Chase National Bank of New York in the same manner as it had theretofore done, to wit, by sending New York Exchange to the Chase National Bank payable to the Peoples State Bank with instructions to the Chase National Bank to deposit the said amount to the credit of the Peoples State Bank and to pay out of said deposit the coupons of the City of Sumter as and when presented to the Chase National Bank. The Peoples State Bank closed its doors before its New York Exchange cleared in New York.

The Peoples Bank maintained in its savings department a ledger sheet of an account in the name of the "City of Sumter—Coupon Account." This account shows a remittance on June 30, 1931 of $10,375. The balance in the account had been reduced by September 14 to $150 and on September 25, 1931, an item of $150 was charged to this account, which wiped out the balance. On October 7, 1931, there was a deposit of $150, which created a balance of $150, which remained in the bank at the time of the closing thereof. The testimony does not explain just why this additional $150 was deposited on October 7, 1931. The claim of the City of Sumter is based on the fact that this is a balance remaining on account of unpaid coupons from its remittance of June 30, 1931. This ledger sheet also shows a deposit on December 31, 1931, of $10,375. The claim of the City of

Sumter for preference is for the $150 balance remaining from the June remittance and the $10,375 which was remitted December 31, 1931.

Appellant Wallace had an account in the savings department of the Sumter Branch of the Peoples State Bank in his name as County Treasurer, Sinking Fund, District No. 32. On December 15, 1931, there was a balance in the account of $3,427.76. On December 28, 1931, a check was charged against this account in the amount of $3,547.50, leaving an overdraft of $119.74. On December 29, 1931, a deposit of $209.29 was made, which left a balance to the credit of this account of $89.55 at the time of the closing of Peoples Bank. On December 24, 1931, Wallace as County Treasurer gave a check for $3,547.50, to the Sumter Branch Bank with instructions to transmit that sum to the Chase National Bank in New York to pay coupons and bonds of School District No. 32, of Sumter County, maturing at that bank on January 1, 1932.

Upon receipt of this check from the County Treasurer the Peoples Bank issued its New York Exchange drawn on the Central Hanover Bank & Trust Company, which was sent to the Chase Bank to be deposited in that bank to the credit of "Peoples State Bank of South Carolina—Sumter Branch." At the same time instructions were given to the Chase Bank that the bonds and coupons of School District No. 32 were due at that bank on January 1, 1932, and that upon presentation thereof they should be charged against this account of Peoples Bank in the Chase Bank and the canceled bonds and coupons should be returned to Peoples Bank when paid. The Chase Bank was cautioned not to get this account confused with the other account of Peoples Bank in that bank.

When Peoples Bank closed its doors on January 2, 1932, there was on deposit to its credit in the Chase Bank the sum of $3,547.50, being the amount of the County Treasurer's check on his account in Peoples Bank, together with $150.41 balance in said account, such amount standing on the books of the Chase Bank in the name of "Peoples State Bank of South Carolina —Sumter Branch." This amount, together with other sums on deposit to the credit of Peoples Bank, was taken over by the Chase Bank as a credit on the indebtedness of Peoples Bank under the terms of its collateral notes held. Upon the payment of the Chase Bank indebtedness in full a considerable amount of collateral was returned to the receivers of Peoples Bank.

The judge below found as a fact that the County Treasurer had been making similar remittances for some years prior to this particular remittance and had such knowledge of the manner in which the Sumter Branch was handling these remittances as to charge him with notice.

After making findings of fact the judge below, in an able opinion, reached the conclusion that the preferences sought should be denied and we are of the opinion that his conclusion was correct.

The elements necessary to establish a trust are not present. When the appellants directed the Sumter Branch of the Peoples State Bank to transmit the funds in question to New York and gave checks on their deposits for that purpose they purchased the credit of the bank. They did not direct that the transactions should be carried out in any particular way and are presumed to have known that they would be done in the customary manner. Appellant Wallace had knowledge of the way in which the bank did this particular business. In these matters both the appellants trusted the bank just as they did when they made a deposit in the bank. The transactions created only the relationship of debtor and creditors between the bank and the appellants. Standard Oil Co. of N. J. v. Elliott et al. (C.C.A.) 80 F. (2d) 158; Leach v. Central Trust Co., 203 Iowa, 1060, 213 N.W. 777, 57 A.L.R. 1165, and note commencing at page 1168; Equitable Trust Co. v. First National Bank, 275 U.S. 359, 48 S.Ct. 167, 72 L.Ed. 313; Legniti v. Mechanics' & Metals National Bank, 230 N.Y. 415, 130 N.E. 597, 16 A.L.R. 185; Lifsey v. Goodyear Tire & Rubber Co. (C. C.A.) 67 F.(2d) 82; Swan v. Children's Home Society (C.C.A.) 67 F.(2d) 84.

As was said by Mr. Justice Stone in an article in 21 Columbia Law Review, p. 507: "As has already been pointed out, the depositor does not contemplate physical transmission of the money deposited by him. He does contemplate that the payment will be effected in the customary manner and that the money deposited will be credited to the customer, will be used by the banker as his own as a part of the common mass of money received from his depositors. The necessary legal conclusion of this contention, acted upon, is that the bank's obligation is purely contractual unless it is expressly stipulated that the money is to be set apart as a quasi trust fund and held as

such for the account of the depositor or the payee."

There was here no augmentation of funds that came into the hands of the receivers of the failed bank, an essential to the establishment of a trust such as will justify a preference. Santee Timber Corporation v. Elliott et al. (C.C.A.) 70 F.(2d) 179, 93 A.L.R. 874; O'Neal v. White (C. C.A.) 79 F.(2d) 835.

The principles laid down by this court in City Council of Charleston v. Elliott, 73 F.(2d) 920, and by the Supreme Court in Blakey v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 76 L.Ed. 1089, 82 A.L.R. 1288, are especially applicable to the facts established here and are controlling.

The cases relied upon on behalf of the appellants deal with a different state of facts and are distinguishable, or are not in accord with the established principles laid down by the great weight of authority.

There was no trust relationship established by the transactions involved, and the action of the judge below in denying the preferences is affirmed.

Affirmed.